Frederick Marvin **HANSON**, Appellant,

v.

**STATE** of Minnesota, Respondent.

No. C3–83–1478.

Court of Appeals of Minnesota.

March 14, 1984.

C. Paul Jones, State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael L. Kirk, County Atty., Fergus Falls, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

This is an appeal from an order denying postconviction relief. Fred Hanson was convicted of two counts of burglary and one count of theft. Hanson contends that (1) the evidence was insufficient to convict because the circumstantial evidence did not exclude, beyond a reasonable doubt, inferences other than guilt and because the testimony of an accomplice was not corroborated; (2) the trial court improperly admitted evidence seized under a search warrant issued upon information obtained in an earlier illegal search; and (3) the prosecutor made a prejudicial opening statement and closing argument. We affirm.

## FACTS

The Vergas Co-op Mill and Elevator and the Peavey Lumber Company, both located in Vergas, Minnesota, were burglarized on July 29, 1981. Approximately $25 was taken from the Co-op. Several Skil saws, a router, saw blades and $193 were taken from Peavey Lumber.

On August 8, 1981, a Becker County deputy sheriff observed saw blades while executing a search warrant at Fred Hanson's home. The blades were similar to those stolen from Peavey Lumber. This search was conducted to determine whether Fred Hanson had property stolen in an unrelated burglary in Becker County. The warrant was issued on information supplied by Ted Monk implicating Fred Hanson in that burglary.

On August 12 and 13, 1981, an Ottertail County deputy sheriff interviewed Ted Monk about the burglaries in Vergas. Monk said that he, Fred Hanson and Rickey Hanson participated in the burglaries and that some of the stolen property was in Fred Hanson's home. The deputy sheriff also interviewed Rickey Hanson. Rickey

Hanson said that Fred Hanson was a participant in the Vergas burglaries.

Based on Ted Monk's and Rickey Hanson's statements and the Becker County officer's observation of the saw blades, another warrant was obtained to search Fred Hanson's home. The officers seized ten saw blades and several other items. Photographs of the saw blades were admitted at trial.

At the trial Rickey Hanson admitted that he participated in the Vergas burglaries along with Fred Hanson and two other men. Rickey Hanson's testimony was consistent with his August 13, 1981, statement.

Scott Bachleitner, who lived intermittently with Fred Hanson but was not involved in the burglaries, testified that when he returned to the Hanson home on August 4, 1981, Fred Hanson told him about the Vergas burglaries.

Ted Monk testified for Fred Hanson. Monk maintained that Fred Hanson was not involved in the burglaries. He testified that he sold the items stolen from Peavey Lumber to Fred Hanson. Monk's testimony was contrary to his earlier statements.

On January 28, 1982, Fred Hanson was convicted by a jury of two counts of burglary in violation of Minn.Stat. § 609.58, subd. 2(3), and one count of theft in violation of Minn.Stat. § 609.52, subd. 2(1). A postconviction petition was filed and the petition was denied. Fred Hanson appeals from the order denying postconviction relief.

## ISSUES

1. Was the evidence sufficient to support the jury verdict?

2. Was the August 13, 1981, search warrant invalid because it was based in part upon information obtained during the August 8, 1981, search?

3. Did the prosecutor make a prejudicial opening statement and closing argument?

## ANALYSIS

1. Appellant contends that his conviction must be set aside because the circumstantial evidence and uncorroborated testimony of an accomplice was not sufficient to support the jury's verdict.

■ The scope of review in a postconviction proceeding is limited to whether there is sufficient evidence to sustain the findings of the postconviction court. *Barness v. State*, 290 Minn. 509, 510, 187 N.W.2d 111, 112 (1971). In this case the postconviction court found that the evidence was sufficient as a matter of law to convict Fred Hanson. Appellant's claims of error will be addressed individually.

### A. Circumstantial Evidence

■ Appellant sets forth the standard for reviewing convictions based on circumstantial evidence and concludes that the evidence in his case does not exclude, beyond a reasonable doubt, inferences other than guilt. A conviction based on circumstantial evidence can only be sustained when "the reasonable inferences from such evidence are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of his guilt." *State v. Threinen*, 328 N.W.2d 154, 156 (Minn.1983) (citations omitted). However, the standard appellant advances is one used when the evidence of the defendant's guilt is entirely circumstantial, *State v. Vu*, 339 N.W.2d 892, 898 (Minn.1983), or when there is little direct evidence. *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn. 1980).

■ We are not confronted with a situation where there is only circumstantial evidence or little direct evidence. The State's case in large part rested upon the testimony of Rickey Hanson, an eyewitness who supplied direct evidence of Fred Hanson's guilt. Scott Bachleitner's testimony that Fred Hanson admitted his participation in the burglaries is also direct, rather than circumstantial, evidence. *State v. Weber*, 272 Minn. 243, 254, 137 N.W.2d 527, 535 (1965). Appellant's claim that the conviction must be set aside because it was based only on circumstantial evidence which did not exclude guilt is without merit.

### B. Accomplice Testimony

Appellant contends that the evidence presented by the State was insufficient to corroborate the accomplice testimony of Rickey Hanson. This Court recently analyzed the requirements for corroboration of accomplice testimony in *In the Matter of the Welfare of D.M.K.*, 343 N.W.2d 863 (Minn.Ct.App.1984). We indicated that a conviction cannot rest on the uncorroborated testimony of an accomplice. Although corroboration evidence need not be strong evidence of guilt, it must substantially point to defendant's guilt and sufficiently tend to confirm the truth of the accomplice testimony. *Id.* at 12.

■ The postconviction court found ample corroborating evidence in this case including: the testimony of Scott Bachleitner, the recovery of stolen property during a search of appellant's home, the appellant's opportunity and motive to commit the crime, and the familiar relationship of appellant and the other individuals involved in the burglaries. The postconviction court's determination is supported by the evidence and includes more than the requisite corroboration needed to restore confidence in the naturally suspect testimony of an accomplice. This evidence substantially points to appellant's guilt and sufficiently tends to confirm the truth of the accomplice testimony.

2. Appellant next contends that the August 8, 1981, search conducted by the Becker County Sheriff's Office was illegal because the warrant was issued upon less than probable cause. He further contends that since information obtained during the August 8 search was used to support the issuance of the August 13 search warrant, the August 13 search was also illegal.

■ The specific issue of the validity of the August 8, 1981 search warrant was decided by this Court in *Hanson v. State*, 344 N.W.2d 420 (Minn.Ct.App.1984). We held that there was sufficient probable cause for the warrant to issue. *Id.* at 424. The August 8, 1981, search was therefore valid as was the August 13, 1981, search. Evidence obtained pursuant to the August 13, 1981, search was properly admitted.

3. Appellant finally contends that the prosecutor committed error in both his opening statement and his final argument and that this error requires a reversal of his conviction.

In his opening statement, the prosecutor described a number of people who would be testifying at trial and classified them as "the good folks in our case." He also described three people whom he called "the bad guys." He then said that by establishing each and every material element of four crimes, Fred Hanson's name would be added to the "bad guy category." In his closing argument the prosecutor asked the jury to decide whether Fred Hanson belonged on the same list as the "bad guys."

Appellant did not object to either the opening statement or the closing argument. Instead, his counsel continued the theme begun by the prosecutor. In his opening statement, Hanson's counsel told the jury that the fact that "Mr. Hanson knows these bad guys * * * does not necessarily mean that he's guilty of these crimes." In his closing argument Hanson's counsel argued that the State categorized Hanson as a crook and bad guy long before the trial and the State was not interested in determining whether or not Hanson was guilty, but rather was interested in proving him guilty. Appellant's counsel also told the jury that it didn't matter whether Hanson was a good guy or a bad guy, rather, what mattered was whether Hanson was guilty of the crimes charged.

■ "The general rule is that if defense counsel fails to object to allegedly improper conduct by the prosecutor, the defendant is deemed to have forfeited his right to have the issue considered on appeal." *State v. Russell*, 330 N.W.2d 459, 461 (Minn.1983). The prosecutor's comments may have been inappropriate, but they were not objected to by counsel. Appellant has not presented any compelling reason why we should not follow the general rule.

## DECISION

The postconviction court's findings that the State presented sufficient evidence to convict appellant, the search warrant was valid, and the prosecutor's statements did not constitute reversible error are affirmed.