COMMONWEALTH *vs.* VIVIAN WOTAN.[1]

Norfolk. February 8, 1996. - May 23, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & FRIED, JJ.

*Telephone. Statute,* Construction. *Practice, Criminal,* Complaint. *Evidence,* Prior misconduct. *Words,* "Repeatedly."

The term "repeatedly" found in G. L. c. 269, § 14A, was construed to be ambiguous as applied to a prosecution under that statute in which the sole admissible evidence against the defendant consisted of two hang-up telephone calls to the complainants that had been traced by the telephone company to the defendant. [741-743]

COMPLAINT received and sworn to in the Brookline Division of the District Court Court Department on December 15, 1992.

On transfer to the jury session of the Dedham Division, the case was tried before *Gerald Alch*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kimberly Homan* for the defendant.

*Robert C. Cosgrove*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was charged with making annoying telephone calls under G. L. c. 269, § 14A (1994 ed.), which makes it a misdemeanor to telephone someone repeatedly solely to harass, annoy, or molest.[2] She was tried before a jury of six in the District Court, found guilty, and sentenced to ninety days in a house of correction, forty-five days to be

---

[1]A pseudonym supplied by the Appeals Court.

[2]General Laws c. 269, § 14A (1994 ed.), provides in pertinent part: "Whoever telephones another person . . . repeatedly, for the sole purpose of harassing, annoying or molesting such person or his family, whether or not conversation ensues . . . shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than three months, or both."

served and the balance suspended, subject to probation conditions.

The defendant's conviction was affirmed by the Appeals Court. 37 Mass. App. Ct. 727 (1994). The Appeals Court decided that the defendant's two telephone calls are sufficient as matter of law to satisfy the "repeatedly" element of G. L. c. 269, § 14A. *Id.* at 728-729. It is debatable whether the Appeals Court should have reached the question of the scope of the term "repeatedly." The defendant did not preserve this issue in the trial court and raised it for the first time in her Appeals Court reply brief, after our opinion in *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543 (1994), was released. Inasmuch as the Appeals Court addressed the issue and we granted the defendant's application for further appellate review, it is appropriate for us to consider it as well, despite the Commonwealth's objection. See *Commonwealth* v. *Twitchell*, 416 Mass. 114, 125-130 & n.14 (1993) (defendant's failure to raise certain affirmative defense created substantial risk of miscarriage of justice; reversing convictions); *Commonwealth* v. *O'Connor*, 406 Mass. 112, 121 n.8 (1989) (argument made explicitly for the first time in defendant's reply brief was made too late; nonetheless court chose to deal with it); *Commonwealth* v. *John G. Grant & Sons*, 403 Mass. 151, 153 n.2 (1988) (defendant did not raise issue at trial, but because the Appeals Court considered the point, court decided issue); *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 334 n.7 (1983) (where defendants failed to raise issue in trial court, but where this court later issued relevant decisions, court reached claims not raised below).

We conclude that the evidence was insufficient to warrant a finding of guilty; therefore, we do not discuss the defendant's other claims of error.

We summarize the facts as the jury could have found them. On September 3, 1992, Arnold Kegan[3] and his wife requested a "trap" on their home telephone to trace annoying telephone calls that they had been receiving for a period of years. While the trap was in place, the defendant placed two calls to the Kegan residence: One on September 16, 1992, at 9:46 P.M. and one on September 17, 1992, at 11:34 P.M. On both occasions, the defendant hung up the telephone when Kegan's wife answered.

---

[3]A pseudonym supplied by the Appeals Court.

The defendant had previously worked with Kegan and after their working relationship had ended, they began a romantic and sexual relationship. The Kegan family had received thousands of telephone calls over the prior years in addition to the two for which the complaint was sought. They believed that these calls were made by the defendant. Of the other calls, most were "hang-up" calls; however, Kegan testified to several specific occasions when he received unwanted calls from the defendant where she did speak to him.

The interpretation of the term "repeatedly" as used in G. L. c. 269, § 14A, is a matter of first impression for this court.

In several dictionaries, "repeatedly" or "repeated" is defined as "again and again," which suggests at least three times. In other dictionaries, however, "repeatedly" is defined simply as "more than once."[4]

In *Commonwealth* v. *Kwiatkowski, supra* at 548, when construing the stalking statute, G. L. c. 265, § 43 (1994 ed.), we characterized the term "repeatedly" as an ambiguous term, noting that its meaning depended on the context in which the word is used.[5]

"We are required by ordinary rules of statutory construction to construe any criminal statute strictly against the Commonwealth." *Commonwealth* v. *Gagnon*, 387 Mass. 567, 569, *S.C.*, 387 Mass. 768 (1982), cert. denied, 461 U.S. 921, and cert. denied, 464 U.S. 815 (1983). When a statute is found plausibly to be ambiguous, the defendant is given the benefit of the ambiguity. *Commonwealth* v. *Roucoulet*, 413 Mass.

---

[4]"[A]gain and again." Webster's New Ninth Collegiate Dictionary (1991). "More than once, again and again, frequently." 8 Oxford English Dictionary 1978 (1989). "[R]enewed or recurring again and again: constant, frequent . . . 2: said, done, or presented again." Webster's Third New Int'l Dictionary 1924 (1993). "[D]one, made, or said again and again." Random House Dictionary 1118 (rev. ed. 1975). In the future we will construe the statute as requiring three or more calls.

[5]The term has not been uniformly construed in other jurisdictions. See, e.g., *Konrad* v. *State*, 763 P.2d 1369, 1379 (Alaska Ct. App. 1988) (means more than once); *People* v. *Heilman*, 25 Cal. App. 4th 391, 400 & n.5 (1994) (same); *People ex rel. VanMeveren* v. *County Court*, 191 Colo. 201, 205 (1976) (two or more); *State* v. *Diede*, 319 N.W.2d 818, 821 (S.D. 1982) (same). But see *Bethlehem Steel Corp.* v. *Occupational Safety & Health Review Comm'n*, 540 F.2d 157, 162 & n.11 (3d Cir. 1976) (means more than twice).

647, 652 (1992). This "does not mean that an available and sensible interpretation is to be rejected in favor of a fanciful or perverse one." *Id.*

In the present case, however, construing the term "repeatedly" in favor of the defendant is not a fanciful construction. Since the term "repeatedly" has two possible meanings, it is not fanciful or perverse to conclude that the term is ambiguous when applied to the facts of this case.

Although there was evidence of additional telephone calls by the defendant, these calls were not charged in the complaint. Evidence of uncharged conduct cannot be used to prove an element of the crime charged. See *Commonwealth* v. *Barrett*, 418 Mass. 788, 795 (1994), and cases cited; *Commonwealth* v. *Trapp*, 396 Mass. 202, 206 (1985). Furthermore, we do not know whether the jury believed that the other calls had taken place or convicted the defendant solely on the basis of the two calls specified in the complaint.

*Judgment reversed.*