**STATE of Minnesota, Respondent,**

v.

**Christopher Ashton COLLINS, Appellant.**

**No. C5–97–1444.**

Court of Appeals of Minnesota.

May 18, 1998.

Review Denied July 16, 1998.

---

Hubert H. Humphrey III, Attorney General, St. Paul, and Stephen N. Betcher, Goodhue County Attorney, J. Robert Keena, Assistant County Attorney, Red Wing, for respondent.

Lawrence W. Pry, Assistant State Public Defender, St. Paul, for appellant.

Considered and decided by TOUSSAINT, C.J., and WILLIS and MULALLY,* JJ.

## OPINION

WILLIS, Judge.

Appellant Christopher Collins challenges his convictions of two counts of felony harass-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Collins was also charged, based on each pair of letters, with a pattern of harassing conduct in

ment on the grounds that (a) two acts cannot constitute acting "repeatedly" under the statute, (b) the district court erred in allowing reference at trial to a prior harassment conviction to which Collins stipulated, and (c) the jury instructions were improper. Collins also challenges the sufficiency of the evidence for his conviction of witness tampering and his sentencing. We affirm.

## FACTS

In 1995, appellant Christopher Collins was sent to prison as the result of pleading guilty to a third-degree assault on the five-year-old daughter of his then-girlfriend, Jacinta Forsman. The court ordered Collins to have no contact with Forsman, but he sent two letters to her later that year and in August 1996, he pleaded guilty to gross misdemeanor harassment based on the letters.

In October 1996, Forsman received two letters at her Red Wing home that showed Collins's prisoner number as the sender. The letters, signed "Chris," stated that the writer would be getting out of prison and seeing Forsman soon; the second letter had a threatening tone and concluded, "Give the kids my love." Forsman took the letters to the Red Wing Police Department. She then received a third letter similar in tone to the second, postmarked November 8, 1997. On November 12, based on the first two letters, the county charged Collins with harassment, second or subsequent violation, a felony under Minn.Stat. § 609.749, subd. 4 (1996). Forsman received a fourth letter, postmarked December 5, which contained bizarre religious references and was signed "the Chosen One." This letter stated, "Goodhue can't help you" and "you won't be alive in 2001." Both envelopes identified Collins as the sender. On December 16, Collins was charged with felony harassment for the third and fourth letters, and he was also charged with first-degree tampering with a witness, in violation of Minn.Stat. § 609.498, subd. 1(a) (1996).[1]

---

violation of Minn.Stat. § 609.749; subd. 5 (1996). Those charges were dismissed by the prosecutor at trial.

Collins pleaded not guilty to all charges and elected to proceed pro se with standby counsel. He stipulated to the 1995 harassment conviction and agreed to the introduction of the letters on which that conviction was based for the purpose of handwriting comparison. The prosecutor made reference to the stipulation in opening and closing statements and the court did so in jury instructions. Collins objected when a witness referred to the prior conviction, stating that he had intended to keep reference to it out of the jury's hearing. The court said the prosecutor did not "have to keep it a secret" but sustained the objection on grounds of redundancy and gave a limiting instruction as to the letters.

In its jury instructions, the court stated:

Intentionally means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result. In addition * * * it means that the actor must have knowledge of those facts which are necessary to make the actor's conduct criminal and which are set forth after the word intentionally.

With intent to or with intent that means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result.

Later, in defining the elements of the offenses, the court instructed:

To harass means to engage in intentional conduct in a manner that would cause a reasonable person under the circumstances to feel oppressed, persecuted or intimidated and caused this reaction on the part of Jacinta Forsman.

Collins made no objection to the jury instructions.

The jury found Collins guilty on all counts. The court imposed sentences of 15 months for harassment and 23 months for witness tampering, consecutive to each other and to

the sentence Collins was serving at the time. The court stated that it believed it was sentencing according to the guidelines but that if the sentence was interpreted as a departure, it was justified on grounds of "the involvement of a child in this matter, and the family closeness that you had with the witness, and the overall conduct and the impact on the victim as reported to the Department of Corrections." Collins appeals.

### ISSUES

1. Did the district court err in implicitly determining that two acts could constitute acting "repeatedly" within the meaning of Minn.Stat. § 609.749, subd. 2(6)?

2. Did the district court err in allowing reference to Collins's stipulation to his earlier conviction?

3. Did the district court err by failing to instruct the jury on specific intent with regard to the harassment charges?

4. Is the evidence sufficient to support the conviction of tampering with a witness?

5. Did the district court err in sentencing Collins?

### ANALYSIS

### I. Harassment Convictions

#### A. Definition of "repeatedly"

■ Collins was convicted under Minn. Stat. § 609.749, subd. 2(6) (1996), of harassment by "repeatedly us[ing] the mail or deliver[ing] or caus[ing] the delivery of letters, telegrams, packages, or other objects."[2] Under the statute,

"harass" means to engage in intentional conduct in a manner that:

(1) would cause a reasonable person under the circumstances to feel oppressed, persecuted, or intimidated; and

(2) causes this reaction on the part of the victim.

---

**2.** Subdivision 2 of the statute defines the conduct as a gross misdemeanor; subdivision 4, under which Collins was convicted, elevates a second

or subsequent offense to a felony. Minn.Stat. § 609.749 (1996).

Minn.Stat. § 609.749, subd. 1 (1996).[3] Collins argues that two acts are not sufficient to constitute acting "repeatedly" under the statute.[4] This is a question of statutory interpretation, which this court decides without deference to the district court or to the jury. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn. 1996). There is no case law interpreting section 609.749, subd. 2(6), or defining the term "repeatedly" for purposes of any other Minnesota criminal statute.[5]

Most states that have considered the issue have defined "repeatedly" to mean "more than once." *See, e.g., State v. Saunders,* 886 P.2d 496, 497 (Okla.Crim.App.1994); *People v. Heilman,* 25 Cal.App.4th 391, 400, 30 Cal. Rptr.2d 422 (Cal.Ct.App.1994); *State v. Culmo,* 43 Conn.Supp. 46, 642 A.2d 90, 98 (Conn.Super.Ct.1993); *United States v. Smith,* 685 A.2d 380, 385 (D.C.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 152, 139 L.Ed.2d 98 (1997); *State v. Randall,* 669 So.2d 223, 227 (Ala.Crim.App.1995); *State v. Martel,* 273 Mont. 143, 902 P.2d 14, 19 (1995); *but see State v. Boone,* 79 N.C.App. 746, 340 S.E.2d 527, 529 (1986) (defining "repeatedly" as "renewed or recurring again and again").[6] Those decisions generally rely on a "plain meaning" analysis. *Cf.* Minn.Stat. § 645.08(1) (1996) (providing that words are to be construed "according to their common and approved usage"). Collins argues that this court should instead follow the analysis of the Supreme Judicial Court of Massachusetts in *Commonwealth v. Wotan,* 422 Mass. 740, 665 N.E.2d 976 (1996). The court in

*Wotan* noted that dictionary definitions of the word "repeatedly" differ and concluded that, because it has two possible meanings, the word is ambiguous; the court therefore applied the rule that ambiguous criminal statutes are to be strictly construed against the state and concluded that the state needed to prove at least three harassing telephone calls in order to convict a defendant. *Id.* 665 N.E.2d at 977–78.

Minnesota also follows the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity [toward the defendant]." *State v. McKown,* 461 N.W.2d 720, 725 (Minn.App.1990) (quoting *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971)), *aff'd,* 475 N.W.2d 63 (Minn.1991). "A statute is ambiguous if it is reasonably susceptible to more than one interpretation." *State by Beaulieu v. RSJ, Inc.,* 552 N.W.2d 695, 701 (Minn.1996). But in this context, we believe that the reasonableness of an interpretation should be determined by reference to the purpose of the rule of lenity, which is to ensure that "criminal statutes will provide fair warning concerning conduct considered illegal." *McKown,* 461 N.W.2d at 725 (quoting *Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985)). In this case, there is no question regarding whether the statute makes certain conduct illegal; rather, the only issue is how many times the same conduct must be committed before criminal liability attaches. *Cf.*

---

3. The supreme court recently found Minn.Stat. § 609.749, subd. 2(7) (1996), which prohibits "any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty," unconstitutional for overbreadth and vagueness. *State v. Machholz,* 574 N.W.2d 415, 422 (Minn.1998). But the court explicitly declined to hold the definition of harassment in subdivision 1(1) unconstitutional "standing alone." *Id.* at 417 n. 1. Both sections under which Collins was convicted have since been amended by 1997 Minn. Laws, ch. 96, §§ 6 to 9.

4. Each of the two counts of harassment on which Collins was convicted involved the sending of two letters.

5. Acting "repeatedly" is also an element of an offense under Minn.Stat. § 609.749, subd. 2(4) (1996) (harassment by repeatedly making telephone calls); Minn.Stat. § 609.79, subd. 1(b) (1996) (repeatedly making telephone calls with

intent to abuse, disturb, or cause distress); and Minn.Stat. § 609.795, subd. 1(3) (1996) (repeatedly using mails with intent to abuse, disturb, or cause distress). In addition, an employer may be guilty of a misdemeanor for "repeatedly" failing to comply with certain requirements of the minimum wage law. Minn. Stat. § 177.32, subds. 1(3), 1(6) (1996).

6. There is a similar split in the federal courts with regard to defining the term for purposes of occupational safety and health violations. *Compare Todd Shipyards Corp. v. Secretary of Labor,* 566 F.2d 1327, 1331 n. 5 (9th Cir.1977) (expressing majority view that repeatedly means more than once) *with Bethlehem Steel Corp. v. Occupational Safety and Health Review Comm'n,* 540 F.2d 157, 161 (3rd Cir.1976) (requiring more than two violations).

*id.* (involving ambiguity as to whether Christian Scientists' withholding of medical treatment from child constituted manslaughter under statutory definition).

■ Defining "repeatedly" to mean "more than once" is reasonable under the plain meaning rule and in view of the word's derivation from "repeat." While "repeatedly" also is commonly used to mean "again and again," *see Wotan,* 665 N.E.2d at 977, such a definition provides insufficient guidance for a criminal statute. We do not find it reasonable to presume both that (1) "again and again" means "more than twice" and (2) a defendant reading the statute would reasonably question whether it was legal to send a second threatening letter. In the absence of a second reasonable construction, the statute is not ambiguous and the rule of lenity does not apply. We therefore hold that for purposes of section 609.749, subdivision 2(6), "repeatedly" means "more than once" and that Collins's conduct can support a conviction under the harassment statute.

### B. Mention of stipulated prior conviction

■ At the beginning of trial, Collins agreed to stipulate to his prior harassment conviction and to introduction of the letters on which the conviction was based for the purpose of handwriting comparison. The prosecutor twice in his opening statement referred to the fact that Collins had stipulated that he had a prior conviction of harassment based on sending letters to Forsman, and Collins did not object. He did object when the prosecutor elicited a police officer's testimony about his involvement in obtaining the prior conviction. The court sustained the objection on grounds of redundancy but declined to forbid the prosecutor from referring to the stipulated prior conviction. The prosecutor did so again in his closing argument, and the court referred to the stipulated prior offense in its jury instructions, both times without objection by Collins.

■ Generally, an appellant must object to improper argument at the time it occurs in order to preserve the issue for appeal. *Hanson v. State,* 345 N.W.2d 794, 797 (Minn.App. 1984). Collins, who had standby counsel

present to assist him, not only failed to make a timely objection, but also he failed to have the stipulation stated in terms that would have furnished grounds for an objection.

■ The defendant's offer to stipulate normally does not deprive the state of its right to introduce relevant evidence. *State v. Carnahan,* 482 N.W.2d 793, 795 (Minn.App. 1992). There are exceptions for certain types of evidence deemed so prejudicial and of so little probative value to any issue other than a formal element of the offense that the defendant has a right to seek their removal from the jury's consideration through a stipulation or judicial admission. *See State v. Davidson,* 351 N.W.2d 8, 11 (Minn.1984) (allowing defendant accused of being felon in possession of firearm to stipulate to felon status and have trial limited to issue of firearm possession, with jury instructed that defendant stipulated to fact that he was not legally entitled to possess firearm); *State v. Clark,* 375 N.W.2d 59, 62 (Minn.App.1985) (allowing aggravated DWI defendant to stipulate to prior conviction and resulting driver's license revocation, resulting in presentation to jury as simple DWI).

Here, it was the prosecutor, not Collins, who apparently sought the stipulation. Moreover, Collins stated on the record only that he intended to stipulate to the prior conviction, without stating he wanted to keep the fact of the stipulation from the jury. By the time Collins objected, the jury had already heard repeated reference to the stipulation. Because Collins did not make clear what he intended the stipulation to include, and did not object to references to the prior conviction until after two such references had already been made, we conclude that Collins waived his right to challenge the admission of this evidence on appeal.

### C. Jury instruction on specific intent

The supreme court has held that an error in jury instructions is reviewable in the absence of an objection if it affects substantial rights or involves "fundamental law." *State v. Malaski,* 330 N.W.2d 447, 451 (Minn.1983). Under the version of the harassment statute in effect at the time of Collins's conviction, a

specific intent to harass, rather than a general intent to commit conduct that results in a victim's feeling harassed, was an element of harassment under section 609.749. *State v. Orsello*, 554 N.W.2d 70, 76 (Minn.1996).[7] Last year, this court determined that a court's failure to instruct a jury on specific intent to harass was a fundamental error that an appellant could not waive by failing to object. *State v. Loewen*, 565 N.W.2d 714, 715–16 (Minn.App.1997), *review granted* (Minn. Aug. 26, 1997). But the supreme court remanded *Loewen* to this court for reconsideration in light of its decision invalidating the provision of the harassment statute under which Loewen had been convicted. *State v. Loewen*, No. CX–96–2062 (Minn. Jan. 22, 1998); *see State v. Machholz*, 574 N.W.2d 415, 422 (Minn.1998) (invalidating Minn.Stat. § 609.749, subd. 2(7) (1996)). This court's decisions do not have precedential effect until the deadline for granting review has expired. *See Hoyt Inv. Co. v. Bloomington Commerce & Trade Ctr. Assocs.*, 418 N.W.2d 173, 176 (Minn.1988) (discussing court of appeals decision that became final when supreme court denied review). Because review was granted and the decision was not affirmed, *Loewen* is not binding precedent.

Nevertheless, we find the logic of *Loewen* persuasive. *Loewen* relied on *State v. Williams*, 324 N.W.2d 154 (Minn.1982), a fraud case in which the supreme court held that failure to instruct as to specific intent is an error in fundamental law that both permits review and requires reversal. *Id.* at 157. We see nothing in *Williams* that precludes its application to a harassment case and therefore conclude that Collins's appeal of the jury instructions is properly before us.

Jury instructions are reviewed to determine whether, taken as a whole, they fairly and adequately explain the law of the case. *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988). Thus, an error in one part of the jury instructions may be cured by other instructions. Although the district court's instruction as to the elements of harassment could be read to require only general intent, the court also gave a definition of "intent"

derived from Minn.Stat. § 609.02, subd. 9(3), (4) (1996), which defines the terms "intent" and "intentionally" for statutory purposes as terms of art indicating that a given offense requires specific intent. *Orsello*, 554 N.W.2d at 74. By giving a definition of "intent" taken from section 609.02, subdivisions 9(3), (4), the district court properly instructed the jury that the offense of harassment requires specific intent, and we conclude that it did not err in its jury instructions.

## II. Sufficiency of Evidence of Witness Tampering

Review on appeal of the sufficiency of the evidence to support a conviction is limited to

> a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did.

*State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The test is whether "the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that a defendant was proven guilty * * * ." *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988). Absent special circumstances, this court will uphold a jury's verdict if there is evidence from which the jury could reasonably infer the existence of all the elements of the crime. But where a conviction is based on circumstantial evidence, the verdict will be sustained only when "the reasonable inferences from such evidence are consistent only with [the] defendant's guilt and inconsistent with any rational hypothesis except that of guilt." *Id.*

Collins was convicted under a statute providing that a person is guilty of first-degree witness tampering if he

> intentionally prevents or dissuades or intentionally attempts to prevent or dissuade by means of force or threats of injury to any person * * * a person who is or may become a witness from attending or testi-

---

**7.** The legislature subsequently overruled *Orsello* by amending the harassment statute to provide that specific intent is not an element. *See* Minn. Stat. § 609.749, subd. 1a (Supp.1997).

fying at any trial, proceeding, or inquiry authorized by law.

Minn.Stat. § 609.498, subd. 1(a) (1996). Under section 609.02, subdivision 9(3), the use of the word "intentionally" makes witness tampering a specific intent offense. *See Orsello,* 554 N.W.2d at 74. Although intent is only one element of the offense and may in most cases be proven only by circumstantial evidence, for a conviction requiring specific intent to stand, such intent must be the only reasonable inference when the evidence as a whole is viewed in the light most favorable to the state. *See, e.g., State v. Andrews,* 388 N.W.2d 723, 727, 729 (Minn.1986) (addressing sufficiency of evidence of specific intent and premeditation in murder case).

Collins argues that the evidence is legally insufficient to prove specific intent because, assuming he wrote the letters, (1) there is no evidence that he knew of the charges filed against him for the first two letters when he wrote the third and fourth letters, and (2) the letters themselves do not link their threats to Forsman's status as a potential witness. A single act can support a witness-tampering conviction. The fourth letter was postmarked the day before Collins's first appearance on the harassment charge that was based on the first two letters, for which he needed to be transported from St. Cloud to Red Wing, and states, "Goodhue can't help you." In light of this evidence, a jury could find that the only rational conclusion was that Collins knew about the charges when he wrote the fourth letter. *See State v. Cooper,* 561 N.W.2d 175, 179 (Minn.1997) (upholding sufficiency of evidence where jury "could have easily concluded" that only reasonable inference was intentional killing).

 Collins is correct that the language of the letters provides only circumstantial evidence of an intent to dissuade Forsman from testifying. He contends that the letters are rationally susceptible of an interpretation that they were intended merely to harass Forsman; such an intent would not be specific intent to tamper with a witness. But in evaluating circumstantial evidence, "the jury may infer that a person intends the natural and probable conse-

quences of his actions." *Id.* The intent inquiry is

> made under an objective standard, namely, the standard that people operate within the broad boundaries of what is deemed normal or sane. * * * * Within this ambit of normality or sanity, jurors, relying on their sensory perceptions, experiences in life, and their common sense, consider the manifestations of the defendant's conduct and determine if the defendant formed the specific intent to do what he did.

*State v. Bouwman,* 328 N.W.2d 703, 705 (Minn.1982).

Here, the state presented evidence that Collins, on the day before his first appearance on a criminal charge, sent a threatening letter to the victim of his crime that alludes to the pending charge. It appears a natural and probable consequence of a threat made under these circumstances that a victim would reconsider her decision to testify. We conclude that when Collins's conduct is considered in light of the evidence as a whole, a hypothesis other than specific intent to tamper with a witness is not rational, and the evidence is therefore sufficient to sustain the jury's verdict.

### III. Sentencing

#### A. Interpretation of sentencing guidelines

The district court sentenced Collins to consecutive terms of 15 months for harassment and 23 months for witness tampering. The witness-tampering conviction would carry a sentence of only 18 months if a criminal history score of zero had been used. The sentencing guidelines provide that a consecutive sentence is presumptive where an offense is committed by an inmate serving an executed prison sentence and that a criminal history score of one is used for each such offense. Minn. Sent. Guidelines II.F. Where consecutive sentencing is not presumptive, "[m]ultiple current felony convictions for crimes against persons may be sentenced consecutively to each other." *Id.* In such permissive consecutive sentencing, a criminal history score of zero is used in determining the duration of the sentence for a second or subsequent offense. *Id.*

Acting on the recommendation of a representative of the Department of Corrections, the district court determined that the sentences for Collins's harassment and witness tampering convictions were presumptively consecutive to the sentence he was currently serving and permissively consecutive to each other. The court then used criminal history scores of one for both offenses, apparently relying on the fact that the sentence for either offense alone would have been presumptively consecutive to the sentence Collins was then serving. Collins argues that the court was required to use a criminal history score of zero for the witness-tampering conviction because it was imposed consecutively as a permissive rather than a presumptive sentence.

■■■■ There is no case law on this issue, but the guidelines provide that a presumptive consecutive sentence is imposed consecutively to the sentence for which the inmate "was confined at the time * * * [the] new offense was committed." *Id.* We conclude that for this provision to have meaning, Collins must be correct in interpreting the guidelines to state that for a sentence to be presumptively consecutive and carry a criminal history score of one, it must be imposed consecutively to the sentence for which the inmate was confined at the time the offense was committed rather than to a sentence that has not yet begun. *See* Minn.Stat. § 645.17(2) (1996) (stating that legislature intends entire statute to be effective). If an inmate commits two offenses while serving the same prison sentence, the sentence for the second new offense, to be consistent with the guidelines, may only be made consecutive to the sentence for the first new offense if the court would be entitled to impose permissive consecutive sentencing. The court must then use a criminal history score of zero for the second new offense.

■■■■ Offenses are sentenced in the order in which they occurred. Minn. Sent. Guidelines II.F. Because the witness tampering took place after the first incident of harassment, we conclude that under the guidelines,

Collins's sentence for witness tampering should either be (1) concurrent with the harassment sentence and presumptively consecutive to the sentence for which he was confined, thereby using a criminal history score of one, or (2) permissibly consecutive to the harassment sentence, using a criminal history score of zero. The state appears to accept this basic interpretation, but argues that this court should interpret the guidelines to allow use of a criminal history score of one for the second of two offenses committed while in custody where the offenses could have been tried separately. But under the guidelines, even if there had been separate trials, the result would be the same.[8] We therefore consider the district court's use of a criminal history score of one for the witness tampering sentence in this case to result in a five-month upward durational departure.

### B. Grounds for departure

■■■■ A court may depart upward from the presumptive sentence "only if aggravating * * * circumstances are present." *State v. Best*, 449 N.W.2d 426, 427 (Minn. 1989). The standard for a departure is "whether [defendant's] conduct somehow may be said to be significantly more serious than typically involved in the commission of the offense." *Id.* This court reviews the question of whether to impose a departure under an abuse of discretion standard. *State v. Dokken*, 487 N.W.2d 914, 916 (Minn.App. 1992), *review denied* (Minn. Sept. 30, 1992). The sentencing guidelines provide a non-exhaustive list of aggravating circumstances. Minn. Sent. Guidelines II.D.2.b.

■■■■ In this case, the court cited as departure factors (1) the involvement of a child, (2) the "family closeness" between Collins and Forsman, and (3) "the overall conduct and impact on the victim." This case does not involve direct victimization of a child or a situation in which a child's presence renders an adult victim unable to flee. *See* Minn. Sent. Guidelines II.D.2.b(1); *State v. Johnson*, 450 N.W.2d 134, 135 (Minn.1990) (allowing departure based in part on age of 14–

---

**8.** The second sentence would then be permissibly consecutive as "[a] current felony conviction for a crime against a person [that] may be sentenced consecutively to a prior felony sentence for a crime against a person which has not expired or been discharged." Minn. Sent. Guidelines II.F..

year–old rape victim); *State v. Hart,* 477 N.W.2d 732, 740 (Minn.App.1991) (upholding departure where burglary and rape took place while children asleep in another room but defendant knew ‹ f their presence), *review denied* (Minn. Jan. 16, 1992). We have found no cases in which a family relationship by itself (as opposed to a position of trust) has been used as a departure factor, and we suspect that a large percentage of witness tampering is committed by domestic abusers in any event.[9] But the overall course of conduct underlying the charge may be a proper departure factor. *See, e.g., State v. Blair,* 474 N.W.2d 630, 639 (Minn.App.1991) (upholding departure for course of conduct underlying aiding and abetting theft because defendant exploited vulnerable runaway teenage girls), *review denied* (Minn. Oct. 11, 1991). We do not consider threats against a victim's child, when made by a person convicted of assaulting the same child, to be typical of the offense of witness tampering. The five-month departure in this case is minor, and under the circumstances we conclude that the district court did not abuse its discretion.

## DECISION

Because the sending of two letters can constitute acting "repeatedly," Collins's conduct supports a conviction of harassment. We conclude that the jury instructions as to harassment were proper, that Collins waived his right to remove evidence of his prior conviction from the jury, and that the record contains sufficient evidence to support the witness tampering conviction. While the district court misinterpreted the sentencing guidelines, it did not abuse its discretion in imposing an upward departure of five months.

**Affirmed.**

---

9. The state attempts to recast the "family closeness" factor as invasion of a zone of privacy. But that factor has been applied only where a defendant has entered a physical space in which a victim has an expectation of privacy, such as her home. *See, e.g., State v. Bock,* 490 N.W.2d 116, 121 (Minn.App.1992) (victim assaulted in his front yard), *review denied* (Minn. Aug. 27, 1992).