*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0467**

State of Minnesota,
Respondent,

vs.

Gary Lee Hanson, Jr.,
Appellant.

**Filed January 30, 2017
Affirmed in part, reversed in part, and remanded
Rodenberg, Judge**

Cottonwood County District Court
File No. 17-CR-15-207

Lori Swanson, Attorney General, Karen B. McGillic, Assistant Attorney General, St. Paul, Minnesota; and

Nick Anderson, Cottonwood County Attorney, Windom, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Halbrooks, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant Gary Lee Hanson, Jr., appeals from his convictions of one count of second-degree burglary (theft of services), one count of second-degree burglary (stalking),

and one count of stalking, challenging the sufficiency of the evidence on all three counts. The state concedes that the evidence is insufficient to support appellant's conviction for second-degree burglary (theft of services), but argues that there is sufficient evidence to sustain the remaining two convictions. We affirm in part, reverse in part, and remand.

**FACTS**

Appellant and R.S. both lived at Perkins Creek Apartments in May 2015. R.S. did not know appellant, although appellant claims that R.S. was an "acquaintance" from "around town." On May 5, appellant left a note on R.S.'s windshield wishing her a "Happy Mother's Day" and asking her to "stop on up, apartment 5." He signed the note "Gary Lee." On May 8, appellant approached the apartment manager and asked her in which apartment R.S. lived. The manager refused to tell appellant where R.S. lived, but agreed to deliver a note from appellant to R.S. Appellant wrote a note saying "Stop by Ratchell Gary Lee, Just thinking of you[.] Need to ask you a favor and still waiting for you to come back [smiley face.] Gary Lee." After appellant left, the manager called R.S. and R.S. said that she did not know who appellant was, but that she recognized his name from the note that had been left on her windshield days earlier.

A third incident occurred approximately ten days later, when appellant approached R.S. as she walked from her apartment to her car. Appellant handed R.S. a six-page letter with multiple gifts, including flowers, a "princess electric toothbrush" and a stuffed energizer bunny. R.S. took the gifts and note, and told appellant to "leave me alone."

The incident leading to the criminal complaint against appellant occurred on May 20, 2015. R.S. returned to her apartment that morning and found that someone had

entered while she was away. R.S. noticed that a door handle had been broken, a candle was lit on her stove, bouquets of flowers and other gifts had been placed around her apartment, and her social security card that had previously been missing was on her nightstand. Someone had also cleaned her apartment, shampooed her carpets, moved her furniture around, and turned on her T.V. and heat. R.S. called police, who arrived and found appellant in the parking lot near R.S.'s apartment. Appellant admitted to having been in R.S.'s apartment, and to having left the gifts and cleaned the apartment. He claimed that he had permission to be there. R.S. testified that she never invited appellant into her apartment and had not spoken with him since the previous incident when she asked him to leave her alone.

Police arrested appellant who was later charged with three counts: second-degree burglary (theft of services), second-degree burglary (stalking), and stalking. At trial to a jury, the state argued that appellant committed second-degree burglary in two ways. First, it argued that appellant committed burglary (theft of services) by entering R.S.'s apartment and using her electricity and heat without her permission. Second, it argued that appellant committed burglary (stalking) by entering R.S.'s apartment and leaving her presents and flowers, conduct which appellant knew or had reason to know would frighten R.S. Third, the state argued that appellant committed the offense of stalking in the course of the four incidents described above.

The jury convicted appellant on all three counts. The district court sentenced appellant for burglary (theft of services) and stalking, but did not sentence appellant for burglary (stalking).

This appeal followed.

## D E C I S I O N

**I.     Sufficiency of the evidence for theft of services**

Appellant asks us to reverse his conviction of second-degree burglary (theft of services), arguing that the evidence presented by the state at trial is not sufficient to prove a theft of services. The state concedes the point, and agrees that we should reverse the burglary (theft of services) conviction.

Appellant presents his challenge as one concerning the sufficiency of the evidence, arguing that his conduct did not meet the statutory definition of the charged offense. When a sufficiency-of-the-evidence claim involves the question of whether the defendant's conduct meets the statutory definition of an offense, we are presented with a question of statutory interpretation that we review de novo. *State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013).

Theft of services occurs when a person "obtains the services of another with the intention of receiving those services without making the agreed or reasonably expected payment of money or other consideration." Minn. Stat. § 609.52, subd. 2(13) (2014). "Services" do not include heating services or use of electricity. *Id.*, subd. 1(9) (2014) (quotation omitted). "Property," on the other hand, is defined as "all forms of tangible property . . . including . . . electricity, gas , . . . and heat supplied by pipe or conduit by municipalities or public utility companies." *Id.*, subd. 1(1) (2014). The state's theory was that appellant committed theft of services by turning on R.S.'s heat and T.V. without permission. Under the plain statutory language, and as the state now concedes, this could

4

only be theft of property, and not theft of services. The charge was premised on a theft of services having been committed. We therefore reverse appellant's conviction of second-degree burglary (theft of services).

## II. Sufficiency of the evidence for stalking

Appellant argues that there was insufficient evidence for the jury to find that he committed the offense of stalking, because the evidence did not prove that he knew or had reason to know that R.S. would become frightened by his attention. Specifically, appellant argues that he had "no inkling that [R.S.] would not appreciate his interest, let alone become frightened" by his notes. He also argues that his "misplaced belief that [R.S.] would welcome his attention" when he broke into her apartment precludes a stalking conviction.

A person is guilty of stalking when he engages "in conduct which the actor knows or has reason to know would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted, or intimidated, and causes this reaction on the part of the victim regardless of the relationship between the actor and victim." Minn. Stat. § 609.749, subd. 1 (2014).[1] "The test of whether words or phrases are threatening is the

---

[1] In 1996, the Minnesota Supreme Court interpreted a previous version of this statute, and held stalking was a specific-intent crime. *State v. Orsello*, 554 N.W.2d 70, 76 (Minn. 1996), *superseded by statute*, 1997 Minn. Laws ch. 96, § 7, at 700. Shortly thereafter, the Minnesota legislature amended the statute to add section 609.749, subdivision 1a, providing that no proof of specific intent is required to convict a defendant of stalking. 1997 Minn. Laws ch. 96, § 7 at 700. Here, the state does not argue that appellant specifically intended to cause R.S. to be frightened or intimidated. It argues only that appellant knew or had reason to know that his conduct would be frightening to R.S. We apply the plain language of section 609.749, subdivision 1, requiring that the appellant "knew or had reason to know" that his conduct would cause R.S. to feel intimidated or afraid. *State v. Franks*, 765 N.W.2d 68, 74-75 (Minn. 2009).

context in which they are used." *Franks*, 765 N.W.2d at 75. A person commits gross-misdemeanor stalking if he "repeatedly mails or delivers or causes the delivery by any means, including electronically, of letters, telegrams, messages, packages, . . . or any communication made through any available technologies or other objects." Minn. Stat. § 609.749, subd. 2(6) (2014). "[F]or purposes of section 609.749, subdivision 2(6), repeatedly means more than once." *State v. Collins*, 580 N.W.2d 36, 42 (Minn. App. 1998) (quotation marks omitted), *review denied* (Minn. Jul. 16, 1998).

The mental-state element of a crime is generally proved circumstantially. *State v. Davis*, 656 N.W.2d 900, 905 (Minn. App. 2003), *review denied* (Minn. May 20, 2003). We apply heightened scrutiny when reviewing the sufficiency of circumstantial evidence, using a two-step analysis. *State v. Al-Naseer*, 788 N.W.2d 469, 473-74 (Minn. 2010). First, we identify the circumstances proved, deferring to the jury's acceptance of evidence that proved those circumstances, as well as the jury's rejection of evidence that conflicted with those circumstances. *Id*. at 473. Second, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013) (quotations omitted). We "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved; including the inferences consistent with a hypothesis other than guilt." *Id*. (quotations omitted). We will sustain a conviction if "the reasonable inferences that can be drawn from the circumstances proved as a whole" are "consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015).

6

Because the jury found appellant guilty of stalking and of burglary with a predicate offense of stalking, our analysis of the circumstances proved begins with deference to the jury's acceptance of evidence consistent with its verdict. *Al-Naseer*, 788 N.W.2d at 473. Considered in that light, the evidence proves the following circumstances. Appellant left a note on R.S.'s windshield on May 5, 2015, a point in time at which they did not know one another. Appellant still had not met R.S. when, on May 8, he approached her apartment manager and asked where R.S. lived, and then asked the manager to deliver a note that said, "Just thinking of you[.] Need to ask you a favor and still waiting for you to come back." Appellant's first personal interaction with R.S. was on May 18, when he approached her outside of her apartment and gave her a six-page letter and some gifts. His letter stated that he does not "play games," that he would like to have sex with R.S., and that he knew about R.S.'s past relationships. On that occasion, R.S. directly requested appellant to leave her alone. Two days later appellant entered R.S.'s apartment without her knowledge or consent, cleaned it, shampooed the carpets, lit candles, rearranged the living room, and left gifts and flowers for R.S. around the apartment.

Appellant argues that his actions arose from a "misplaced belief" that his approaches to R.S. would be welcomed and that he is therefore guilty of, at most, trespassing. Although appellant claims that he and R.S. were acquaintances on May 5, we give no weight to evidence the jury necessarily rejected in finding appellant guilty. *Silvernail*, 831 N.W.2d at 599. The jury rejected appellant's testimony. The circumstances proved by the state are that appellant repeatedly made unwelcome contact with R.S. and entered her apartment unwelcomed and uninvited after R.S. told him, "leave me alone."

7

Given the circumstances proved by the state, the evidence leaves room for no reasonable inference other than that appellant knew or had reason to know that his actions would make R.S. afraid. The letters appellant sent R.S. discussed his knowledge of intimate details about her life. Appellant conveyed his feelings of sexual attraction towards R.S., whom he had never met personally until this disturbing pattern of unsolicited attention began. She told him to leave her alone, but he did not. In that context, the only rational inference from the circumstances proved is that appellant knew or should have known that his actions would cause R.S. to feel threatened or frightened.

The evidence is sufficient to support appellant's stalking conviction.

### III.    Second-degree burglary (stalking)

Appellant argues that his conviction for second-degree burglary must also be reversed because the state failed to prove the predicate crime of stalking. A person commits second-degree burglary when he "enters a building without consent and commits a crime while in the building." Minn. Stat. § 609.582, subd. 2 (2014).

As discussed above, the evidence is sufficient to support the jury's verdict that appellant entered R.S.'s apartment without her consent, and that he committed the predicate offense of stalking while in her apartment. The evidence is sufficient to support appellant's conviction for second-degree burglary (stalking).

### IV.    Sentencing

The district court correctly sentenced appellant for only one of the burglary counts arising out of a single course of conduct. Minn. Stat. § 609.035, subd. 1 (2014). The district court chose to sentence appellant on the burglary (theft of services) count. Because

we reverse appellant's conviction for that count but affirm his conviction of burglary (stalking), we remand to the district court for resentencing.

**Affirmed in part, reversed in part, and remanded.**