*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0038**

State of Minnesota,
Respondent,

vs.

Cynthia Marie Buhs,
Appellant.

**Filed February 6, 2017
Affirmed
Connolly, Judge**

Stearns County District Court
File No. 73-CR-14-8769

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Veronica May Surges, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Connolly, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges her conviction of misdemeanor domestic assault—intent to cause fear of immediate bodily harm, arguing that the evidence does not support her conviction because an intent to cause fear of immediate bodily harm was not the only inference that could be drawn from her acts. Because appellant's acts support an inference of intent to cause fear of immediate bodily harm, we affirm.

## FACTS

Appellant Cynthia Buhs is the mother of a daughter, N., born in August 1997, and a son, J., born in January 2004. Appellant and N. had a strained relationship.

On June 22, 2014, when N. was almost 17, police were repeatedly called to appellant's home because of conflicts between her and N. Late that evening, police told N. and appellant to remain on separate levels of their residence. Appellant's bedroom was on the lower level. N. also had a bedroom on that level, but it did not contain a bed, and N. generally slept on a couch on the upper level.

Early in the morning of June 23, N. came upstairs to go to sleep. When appellant told her to go back downstairs, N. refused and sat on the couch. Appellant attempted to use two techniques for de-escalating the conflict: making N. uncomfortable by sprinkling her with water and leading her in the direction appellant wanted her to go, i.e., toward the stairs. Neither technique was effective, and N. remained sitting on the couch.

When appellant tried to pull N. off the couch by her ankle, N. kicked at appellant and fell off the couch. Appellant then got a dog leash, which she wrapped around N.'s ankle, and dragged N. a short distance towards the stairs.

At this point J., then ten, woke up, saw the altercation, and got a knife from the kitchen so he could cut the leash. Appellant and N. both told him to put the knife away. The police were called again; they came to the house and separated appellant, N., and J.

As a result of this incident, appellant was charged with gross misdemeanor malicious punishment of a child, misdemeanor domestic assault—intent to cause fear of immediate bodily harm, and misdemeanor domestic assault--inflicting bodily harm. After a bench trial, the district court found appellant guilty of misdemeanor domestic assault— intent to cause fear, but not guilty of gross misdemeanor malicious punishment of a child or of misdemeanor domestic assault—inflicting bodily harm.[1]

Appellant was sentenced to 90 days in jail, 88 of them stayed for two years, with credit for two days, and placed on supervised probation. She challenges her conviction, arguing that the evidence does not support the conclusion that she had the intent to cause fear of immediate bodily harm in N.

## DECISION

We use the same standard of review in bench trials and in jury trials in evaluating the sufficiency of the evidence. We

---

[1] We note the discrepancy between the district court's unchallenged findings that appellant "was able to secure the leash around [N.]'s ankle and attempted to pull her toward the stairway" and that "[N.] testified that it hurt when her mother [appellant] was attempting to drag her with the dog leash," and its conclusion that "[t]he State has not proven beyond a reasonable doubt that [appellant] intentionally inflicted or attempted to inflict bodily harm on [N.]." However, that discrepancy is not relevant to this appeal.

3

> will view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict. The verdict will not be overturned if, given due regard to the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, the factfinder could reasonably have found the defendant guilty of the charge offense.

*State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011) (quotations and citations omitted).

Domestic assault – intent to cause fear – is a specific-intent crime, requiring that the defendant have an intent to cause a particular result: the state must "prove the defendant committed an act with an additional special mental element—specifically an act done with intent to cause fear in another of immediate bodily harm or death." *State v. Fleck*, 810 N.W.2d 303, 309 (Minn. 2012) (quotation and emphasis omitted). Intent is generally proved by circumstantial evidence, obtained by drawing inferences from the defendant's words and acts in light of the totality of the circumstances. *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997).

> We use a two-step analysis for deciding whether the circumstantial evidence was sufficient to sustain a guilty verdict: First, we must identify the circumstances proved, giving deference to the [factfinder]'s acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State. Second, we independently examine the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt.
>
> For the first step, we defer to the factfinder; for the second step, we engage in our own examination of the reasonableness of the inferences.

*Palmer*, 803 N.W.2d at 733 (quotations and citations omitted).

Appellant concedes that an intent to cause fear of immediate bodily harm in N. can be inferred from her wrapping a leash around N.'s ankle and dragging N. towards the top of the stairs; she also concedes that the evidence shows N. did experience fear. But appellant argues that the evidence does not support her conviction because the intent to cause N. fear of immediate bodily harm is not the only inference that can be drawn from her words and acts.

For this argument, appellant relies on *State v. Collins*, 580 N.W.2d 36 (Minn. App. 1998), *review denied* (Minn. July 16, 1998), but we believe she misconstrues its language. *Collins* holds that, "[f]or a conviction requiring specific intent to stand, such intent must be the only reasonable inference when the evidence as a whole is viewed in the light most favorable to the state." *Collins*, 580 N.W.2d at 44. Appellant paraphrases this sentence: "In other words, to sustain [appellant's] conviction, she cannot have reasonably intended any other result than causing [N.] fear of immediate bodily harm." But the phrase "only reasonable inference" in *Collins* does not mean that a defendant could not have intended anything other than, or in addition to, causing fear of bodily harm when the act was committed; it means that the inference that the defendant did *not* intend to cause fear of bodily harm is not a reasonable inference.

*Collins* concerned a conviction of tampering with a witness, a specific-intent crime. *See* Minn. Stat. § 609.498, subd. 1(a) (2016) (providing that tampering with a witness is committed by one who "intentionally prevents or dissuades or intentionally attempts to prevent or dissuade by means of force or threats of injury to any person . . . a person who is or may become a witness from attending or testifying at any trial . . .).

> Here, the state presented evidence that Collins, on the day before his first appearance on a criminal charge, sent a threatening letter to the victim of his crime that alludes to the pending charge. It appears a natural and probable consequence of a threat made under these circumstances that a victim would reconsider her decision to testify. We conclude that when Collins's conduct is considered in light of the evidence as a whole, a hypotheses other than specific intent to tamper with a witness is not rational, and the evidence is therefore sufficient to sustain the jury's verdict.

*Collins*, 580 N.W.2d at 44; *see also Cooper*, 561 N.W.2d at 179 (holding that a factfinder may infer that a defendant intended the natural and probable consequences of his or her actions). Thus, the phrase "only reasonable inference" meant that Collins did have the intent to dissuade the victim from testifying when he wrote the letter, not that he had no other intent at that time. Analogously, the state here had to prove that appellant had the intent to cause N. fear of immediate bodily harm when she wound a leash around N.'s ankles and dragged her across the floor; the state did not have to prove that appellant had no other intent at the time she committed those acts.

Appellant also argues that the fact of N.'s fear is not independently sufficient to support a finding of appellant's intent to cause fear. For this argument, she relies on *In re Welfare of T.N.Y.*, 632 N.W.2d 765, 769 (Minn. App. 2001) ("The crime is in the act done with intent to cause fear, not in whether the intended result is achieved." (quotation omitted)). But *T.N.Y.* is distinguishable. In that case, this court reversed an adjudication of delinquency for second-degree assault – intent to cause bodily harm that had been based solely on the testimony of a police officer, who testified that he was afraid when he and two other armed officers were confronted by a 13-year-old, who was holding a gun but not

6

pointing it at the officers and who hesitated before dropping the gun in response to the officers' orders. *T.N.Y.*, 632 N.W.2d at 770. "The court's finding of intent [did] not indicate that the court considered T.N.Y.'s conduct, the character of the alleged assault, or the events occurring before and after the crime." *Id.* at 769-70. Here, there was no such omission: the district court did not base its finding of appellant's guilt solely on N.'s fear but rather on appellant's acts of wrapping a leash around N.'s ankle and dragging her towards the top of the stairway and on reasonable inferences from those acts. *See Cooper*, 561 N.W.2d at 179. Unlike the acts of the child in *T.N.Y.*, appellant's acts support the reasonable inference that she intended to cause fear of bodily harm in N., and, together with the fact that N. actually experienced fear of bodily harm, support the inference that appellant intended to cause fear of bodily harm in N.

The evidence supports the conclusion that appellant had the intent to cause fear of immediate bodily harm in N.

**Affirmed.**