**STATE of Minnesota, Respondent,**

v.

**Kurtis Dean MACHHOLZ,
petitioner, Appellant.**

**No. CX–96–1865.**

Supreme Court of Minnesota.

Jan. 22, 1998.

Dunlap & Seeger, P.A., Peter C. Sandberg, Rochester, for appellant.

Hubert H. Humphrey III, Atty. Gen., Raymond F. Schmitz, Geoffrey A. Hjerleid, Rochester, for respondent.

Gay & Lesbian Community Action Council, Joni M. Thome, Minneapolis, amicus curiae.

Minnesota Civil Liberties Union, Sean A. Shiff, St. Paul, amicus curiae.

## OPINION

PAGE, Justice.

Appellant Kurtis Dean Machholz is charged with felony harassment in violation of Minn.Stat. § 609.749, subds. 1(1), 2(7), and 3(1). At a pre-trial hearing, Machholz moved to dismiss the charges against him, claiming that subdivision 2(7), read in conjunction with subdivision 1(1), and subdivision 3(1) of Minn. Stat. § 609.749 are invalid under the First Amendment of the United States Constitution as vague and overbroad on their face and as applied to him. The district court agreed and dismissed the charges against Machholz, finding that Minn.Stat. § 609.749, subd. 2(7), is unconstitutionally vague and subdivision 3(1) is unconstitutionally overbroad. The court of appeals reversed, holding that the provisions in question are neither unconstitutionally vague nor overbroad. We conclude that Minn.Stat. § 609.749, subd. 2(7), is overbroad on its face and as applied and therefore reverse the court of appeals and dismiss the charges against Machholz.[1]

On October 11, 1995, a group of people gathered at the Peace Plaza in downtown Rochester, Minnesota, to celebrate National

---

1. For ease of discussion, throughout the remainder of this opinion we will refer solely to subdivision 2(7), although our analysis of subdivision 2(7)'s overbreadth incorporates the language of subdivision 1(1) defining harassment as used in the statute. In so doing, we do not mean to suggest that subdivision 1(1) is overbroad standing alone. The issue of overbreadth in this case arises only when subdivision 1(1) is read in conjunction with subdivision 2(7), criminalizing "any other harassing conduct."

Coming Out Day, an annual event for homosexuals, their families, and their friends. Kurtis Machholz was having dinner at Mac's Restaurant, located near the Plaza, and noticed the gathering through the restaurant's front window. Because Machholz believes that homosexuality is immoral and perverse, the gathering upset him. As a result, he left the restaurant, mounted the horse he had ridden[2] to the restaurant, and rode through the group of people gathered for the event approximately four times.

As Machholz rode through the crowd, he shouted: "You're giving us AIDS!"; "You're spreading your filth!"; "There are no homosexuals in heaven!"; and "You're corrupting our children!" He also swung the horse's lead rope at an easel that held a sign announcing the event, knocking the easel over. While Machholz admitted to swinging the lead rope at the easel and knocking down the sign, he denied that he was swinging the reins of his horse at the people in the crowd. After Machholz knocked over the easel, he left the Plaza. Machholz's actions did not result in anyone being struck, but a number of people attending the event did indicate that they felt very threatened and frightened by Machholz's actions.

Machholz was charged with felony harassment under Minn.Stat. § 609.749, subds. 1(1), 2(7), and 3(1), which provide in relevant part:

Subdivision 1. Definition. As used in this section, "harass" means to engage in intentional conduct in a manner that:

(1) would cause a reasonable person under the circumstances to feel oppressed, persecuted, or intimidated; and

(2) causes this reaction on the part of the victim.

Subd. 2. Harassment and stalking crimes. A person who harasses another by committing any of the following acts is guilty of a gross misdemeanor:

(1) directly or indirectly manifests a purpose or intent to injure the person, property, or rights of another by the commission of an unlawful act;

(2) stalks, follows, or pursues another;

(3) returns to the property of another if the actor is without claim of right to the property or consent of one with authority to consent;

(4) repeatedly makes telephone calls, or induces a victim to make telephone calls to the actor, whether or not conversation ensues;

(5) makes or causes the telephone of another repeatedly or continuously to ring;

(6) repeatedly uses the mail or delivers or causes the delivery of letters, telegrams, packages, or other objects; or

(7) engages in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty.
* * * *

Subd. 3. Aggravated violations. A person who commits any of the following acts is guilty of a felony:

(1) commits any offense described in subdivision 2 because of the victim's or another's actual or perceived race, color, religion, sex, sexual orientation, disability as defined in section 363.01, age, or national origin. * * *

Minnesota Statutes section 609.749 also has a savings clause which provides:

Subdivision 7. Exception. Conduct is not a crime under this section if it is * * * authorized, required, or protected by state or federal law or the state or federal constitutions.

Machholz contends that both subdivision 2(7) and subdivision 3(1) are unconstitutionally vague[3] and overbroad on their face and as applied to him.

---

2. Machholz is a self-proclaimed "horseman evangelist." His Percheron horse, Prince, is his normal mode of transportation.

3. This court recently construed Minn.Stat. § 609.749 as requiring specific intent to harass. *See State v. Orsello*, 554 N.W.2d 70 (Minn.1996). The state relies on language in *Orsello* as support for its contention that Minn.Stat. § 609.749 was

construed to avoid any void for vagueness challenges. Because we ultimately conclude that subdivision 2(7) is unconstitutionally overbroad, we do not reach Machholz's vagueness challenge. We do note, however, that the decision in *Orsello* was based on our interpretation of the statute, not on any resolution of a constitutional vagueness challenge. Further, we note that the defendant in *Orsello* was not charged under sub-

■ "In evaluating challenges to the constitutionality of statutes, this court recognizes that the interpretation of statutes is a question of law." *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993) (citation omitted). Accordingly, "this court 'is not bound·by the lower court's conclusions.'" *Id.* (quoting *Sherek v. Independent Sch. Dist. No. 699, Gilbert,* 449 N.W.2d 434, 436 (Minn.1990)). "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989) (citation omitted). A party challenging a statute has the "burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Merrill,* 450 N.W.2d 318, 321 (Minn.1990) (citations omitted).

■ A statute is overbroad on its face if it prohibits constitutionally protected activity, in addition to activity that may be prohibited without offending constitutional rights. *State v. Century Camera, Inc.,* 309 N.W.2d 735, 740 (Minn.1981) (citing *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972)). Thus, the overbreadth doctrine departs from traditional rules of standing to permit, in the First Amendment area, a challenge to a statute both on its face and as applied to the defendant. *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973); *State v. Hipp,* 298 Minn. 81, 86–87, 213 N.W.2d 610, 614 (1973). The underlying reason for allowing a defendant to challenge a statute on its face, even when the defendant's own conduct may be constitutionally prohibited, is the potential chilling effect that overbroad statutes have on the exercise of protected speech. *Board of Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 574, 107 S.Ct. 2568, 2571, 96 L.Ed.2d 500 (1987).

■ A statute should only be overturned as facially overbroad when the statute's overbreadth is substantial. *Houston v. Hill,* 482 U.S. 451, 458, 107 S.Ct. 2502, 2507, 96 L.Ed.2d 398 (1987) (citing *New York v. Fer-*

*ber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). Put another way, because the overbreadth doctrine has the potential to void an entire statute, it should be applied "only as a last resort" and only if the degree of overbreadth is substantial and the statute is not subject to a limiting construction. *Broadrick,* 413 U.S. at 613, 93 S.Ct. at 2908.

■ Before we can address a facial overbreadth challenge, we must determine whether the statute in question implicates the First Amendment. If the First Amendment is not implicated, then we need go no further because no constitutional question is raised. The state contends that no First Amendment protections are implicated here because subdivision 2(7) is clearly directed at regulating conduct, not speech, and, therefore, cannot be overbroad. *See* Minn.Stat. § 609.749, subd. 2(7) (1996) (providing that an individual who "engages in any other harassing *conduct* that interferes with another person or intrudes on the person's privacy or liberty" is guilty of harassment) (emphasis added).

■ It is true, as the state contends, that the language of subdivision 2(7) is specifically directed at harassing conduct. However, First Amendment protection is not limited to the written or spoken word; it extends to some expressive activity, because the activity by itself may be communicative. *See Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (affixing a peace symbol to a flag was protected expression); *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (wearing armbands to protest the Vietnam War was constitutionally protected expression); *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968) (burning a draft card brought into play First Amendment protections). The Supreme Court, in *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), formulated the test for determining whether conduct is sufficiently expressive to merit First Amendment protection. The inquiry looks at whether "[a]n intent to convey a particular-

division 2(7), the particular subdivision at issue here.

ized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Id.* at 410–11, 94 S.Ct. at 2730. That is not to say that all communicative conduct is protected. It is not. The Supreme Court has stated: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). The Court went on to say "that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Id.*

There is no question that the harassing conduct proscribed by subdivision 2(7) does encompass expressive activity. The broad reach of the statutory language is not limited to nonexpressive conduct. Subdivision 2(7) criminalizes *any and all* intentional conduct causing a reasonable person to feel oppressed, persecuted, or intimidated, if that conduct interferes with the person's privacy or liberty. We can only conclude that First Amendment protections are implicated by subdivision 2(7).

■ The state argues that even if subdivision 2(7) does reach some expressive activity, the only activity proscribed by the statute is unprotected activity that can be regulated by the state and, therefore, it is not overbroad. While unstated, the essence of the state's argument is that subdivision 2(7) can be read narrowly as applying only to fighting words. The court of appeals, holding that the activity covered by Minn.Stat. § 609.749 is "virtually equivalent to the 'fighting words' category of unprotected speech," agreed. *State v. Machholz,* 561 N.W.2d 198, 201 (Minn.App.1997). We do not believe that subdivision 2(7) is susceptible to such a narrowing construction.

The statute's language sweeps in a whole spectrum of constitutionally protected activity beyond the category of fighting words. Burning a cross at a political rally without question could result in feelings of oppression, persecution, or intimidation and could be an intrusion on another's liberty or privacy. The same would be true if a cross was burned on the lawn of a black family during the middle of the night. In each case, that activity has been held by the Supreme Court to be constitutionally protected under the First Amendment. *See Brandenburg v. Ohio,* 395 U.S. 444 (1969); *R.A.V. v. City of St. Paul,* 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Yet, in each case, such activity is criminalized under subdivision 2(7). The sweep of subdivision 2(7) would also reach a march by the National Socialist Party, displaying swastikas, in a community where many Holocaust survivors reside. Obviously, such a march could result in feelings of oppression, persecution, or intimidation, and interfere with the liberty or intrude on the privacy of the community's Holocaust survivors. In *National Socialist Party of America v. Skokie,* 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977), such a demonstration was found to be constitutionally protected under the First Amendment, yet under subdivision 2(7), it would be criminalized.

The statute also criminalizes any number of day-to-day interactions between people in which an individual deliberately engages in expressive activity that is intended to oppress, persecute, or intimidate, and which may interfere with another's privacy or liberty. For example, a supervisor at work, having failed to get an employee's attention in the past, walks into the employee's office forcefully closing the door, proceeds to intentionally stand over the employee, and while shaking a finger in the employee's face, reprimands the employee for tardiness, absenteeism, or substandard performance. If the supervisor's purpose is to put fear into the employee that if the tardiness or absenteeism does not cease or if the job performance does not improve, he will lose his job, and, as a result, the employee reasonably feels oppressed, persecuted, or intimidated about losing his job, then the supervisor has engaged in criminal conduct under subdivision 2(7). Should an employer's effort to eliminate tardiness or absenteeism, or to improve performance, even if overzealous, be criminalized?

What about the basketball coach who, during half time, yells at the team and throws her clipboard across the locker room, with the deliberate intention of intimidating the individual players into playing harder, with the result that some players reasonably feel harassed? This all too common behavior among coaches would, under the state's reading of subdivision 2(7), be criminal. Finally, what about the law professor using the Socratic method who calls on a first-year student, drills the student for the entire class, and ridicules the student when he falters? The professor's intent clearly is to use intimidation to motivate the class's students into learning the material by being prepared for class, and the students, particularly the targeted student, may reasonably feel oppressed, persecuted, and intimidated. Under the state's reading of subdivision 2(7), the law professor's teaching method would run afoul of the statute.

The state's reading of the statute would criminalize the supervisor's, the coach's, and the law professor's actions in the above examples, yet no one could seriously argue that the activity described in these examples is unprotected by the First Amendment or that the examples involve fighting words. Subdivision 2(7) simply cannot be read as narrowly as the state contends. Given the broad range of constitutionally protected activity reached by subdivision 2(7), and the fact that subdivision 2(7) is not subject to a limiting construction, we conclude that the degree of overbreadth is substantial, rendering subdivision 2(7) overbroad on its face.

▮▮▮▮ Subdivision 2(7) is also overbroad as applied.[4] Machholz's actions, combined with his speech, constitute expressive activity under the First Amendment. He had an intent to convey the message that he opposes the lifestyle of homosexuality, and, given the surrounding circumstances, a reasonable person viewing his activities would have understood that message of opposition. Although in some instances it is possible to separate protected speech from unprotected conduct, under the facts of this case, we cannot find a way to logically do so. The words used by Machholz are inextricably linked to the conduct of riding his horse through the crowd. We find it difficult to believe that Machholz would have been charged under this statute had he simply ridden through the crowd without saying a word.

The state argues, however, that Machholz's actions constitute fighting words, and therefore are proscribable under the First Amendment. As discussed earlier, subdivision 2(7) is not susceptible to a construction limiting its application to fighting words. However, if Machholz's actions do constitute fighting words, then the statute is not overbroad as applied. The fighting words doctrine was first articulated by the United States Supreme Court in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).[5] A two-pronged test was developed by the Court, defining fighting words as those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031. The Court later refined the doctrine in *Terminiello v. Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). The Court advanced the notion that mere offensiveness is not enough to make words proscribable under the fighting words doctrine, stating that freedom of speech is protected against punishment unless it is "shown likely to produce a clear and present danger of a serious substantial evil that rises far above public inconvenience, annoyance, or unrest." *Id.* at 4 The Court

---

**4.** The statute at issue in the present case has a savings clause that provides that conduct protected by the state or federal constitutions is not a crime under this section. Minn.Stat. § 609.749, subd. 7. We agree with a recent Texas decision noting that "a general savings provision 'cannot substantively operate to save an otherwise invalid statute, since it is a mere restatement of well-settled constitutional restrictions on the construction of statutory enactments.'" *Long v. State*, 931 S.W.2d 285, 295 (Tex.Crim.App.1996)

(quoting *CISPES v. FBI*, 770 F.2d 468, 474 (5th Cir.1985)).

**5.** The Court observed that the First Amendment offers no protection to expressive activities that make up "no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky*, 315 U.S. at 572, 62 S.Ct. at 769.

stated recently that "[t]he mere fact that expressive activity causes hurt feelings, offense, or resentment does not render the expression unprotected." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 414, 112 S.Ct. 2538, 2559, 120 L.Ed.2d 305 (White, J., concurring).

 In the present case, Machholz made the following statements: "You're giving us AIDS!"; "You're spreading your filth!"; "There are no homosexuals in heaven!"; and "You're corrupting our children!" While we may find these statements offensive and obnoxious, they do not *per se* constitute fighting words. The utterance of these statements are not likely "to incite an immediate breach of the peace" or "to produce a clear and present danger of a serious substantial evil" as required under *Chaplinsky* and *Terminiello.* Unfortunately, these kinds of statements are all too common. Indeed, one need only open a newspaper or turn on a television to encounter identical sentiments on a daily basis.

Further, Machholz's statements were not directed at a specific individual and they were uttered during an event open to the public in a public place. They were aimed at expressing Machholz's personal animus toward homosexuality as a lifestyle and registering his protest at any celebration of that lifestyle. "[C]ommenting on matters of public concern [is a] classic [form] of speech that lie[s] at the heart of the First Amendment, and speech in public arenas is at its most protected on public sidewalks, a prototypical example of a traditional public forum." *Schenck v. Pro–Choice Network of Western New York,* 519 U.S. 357, —, 117 S.Ct. 855, 858, 137 L.Ed.2d 1 (1997). The fact that Machholz was riding his horse and allegedly swinging the lead rope does not elevate these statements to the level of a "clear and present danger of a serious and substantial evil." Therefore, we conclude that Machholz's actions are not equivalent to fighting words and that subdivision 2(7), as applied to Machholz, is overbroad.

Subdivision 2(7) is unconstitutionally overbroad, facially and as applied. Accordingly, the charges against Machholz must be dismissed.[6]

Reversed.

KEITH, C.J., and BLATZ, J., took no part in the consideration or decision of this matter.

---

6. Having concluded that the charges against Machholz must be dismissed because Minn.Stat. § 609.749, subd. 2(7), is overbroad, we need not, and therefore do not, address Machholz's vagueness challenge to subdivision 2(7), or any of his claims with respect to subdivision 3(1) of the statute.