# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0460

State of Minnesota,
Respondent,

vs.

Antonio Dion Washington-Davis,
Appellant.

**Filed July 13, 2015**
**Affirmed in part, vacated in part, and remanded**
**Hooten, Judge**

Ramsey County District Court
File No. 62-CR-13-2492

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and Reyes, Judge.

## S Y L L A B U S

Minnesota Statutes section 609.322, subdivision 1a(1)–(2) (2010), which criminalizes the solicitation, inducement, and promotion of prostitution, is not facially overbroad under the First Amendment to the United States Constitution or article I, section 3, of the Minnesota Constitution.

## OPINION

**HOOTEN**, Judge

On appeal from his conviction of multiple counts of prostitution-related offenses, appellant argues that: (1) the statute that criminalizes the solicitation and promotion of prostitution is facially overbroad and violates the First Amendment to the United States Constitution and article I, section 3, of the Minnesota Constitution; (2) the evidence was insufficient to establish that appellant aided his codefendant's solicitation of two victims to practice prostitution; (3) the district court committed reversible error by giving an incorrect accomplice-liability jury instruction; (4) the district court abused its discretion by allowing the state to present other-acts evidence; and (5) his sentences were unlawful and must be corrected to comply with applicable law. We affirm in part, vacate in part, and remand for resentencing.

## FACTS

In August 2013, appellant Antonio Dion Washington-Davis was charged by amended complaint with seven prostitution-related offenses, which allegedly occurred between September 2010 and July 2012. The state also charged four of appellant's relatives with similar prostitution-related offenses: appellant's brother, Otis Washington; his uncles, Calvin Washington and Robert Washington; and the mother of appellant's children, Elizabeth Alexander. Specifically, appellant was charged as follows:

- count 1: first-degree aiding and abetting the solicitation of a minor to practice prostitution (C.B.);
- counts 2–4: second-degree aiding and abetting the promotion of the prostitution of an individual (J.M., B.R., and S.A.);

2

- counts 5–6: second-degree aiding and abetting the solicitation of an individual to practice prostitution (C.J. and T.B.); and
- count 7: conspiracy to commit second-degree sex trafficking.

Count 5 was later dismissed by the state. A two-week jury trial was held in October to November 2013 on the six remaining counts. The state introduced the following evidence at trial.

Appellant and his family operated a prostitution scheme from 2008 until appellant and his codefendants were arrested in April 2013. The scheme was primarily operated out of the St. Paul home of appellant's uncle, Robert Washington. All of the victims were adult women, with the exception of C.B., who was under the age of 18. Appellant was the "pimp" for some of the victims, while his brother or uncles were the "pimps" for other victims. Appellant was deeply involved in the operation of the overall scheme, such as directing which women would be assigned to "out-calls" (sexual encounters with men at outside locations), posting advertisements for the prostitutes on websites, and driving women to hotels and other locations for out-calls. B.R. testified that, although she made out-calls for appellant's uncle, Calvin Washington, appellant was "in charge" because he was the one who posted advertisements on the Internet. Another woman, A.T., testified that, although she made out-calls for appellant's brother, appellant sometimes drove her to out-calls.

Elizabeth Alexander, a codefendant, testified against appellant on behalf of the state without the promise of any immunity and without any plea agreement from the state. Alexander met appellant in 2006, became romantically involved with him, and eventually had two children with him. Early on in their relationship, appellant pressured

3

her to work as a prostitute for him, which she eventually did. She described appellant as controlling and testified that he would keep most or all of the money from her out-calls. Appellant would physically abuse her if she did not make enough money or if she refused to go on out-calls. She felt that she had no choice but to continue working as a prostitute for him. The state's expert witness testified that a typical pimp-prostitute relationship is very similar to a domestic-violence relationship.

Alexander testified that she helped appellant promote the prostitution of other women from 2010 to 2012. When appellant was driving other women to out-calls, Alexander sometimes went along. She helped appellant post advertisements online, which depicted the victims in this case and other women. During this period of time, Alexander continued working as a prostitute under appellant's direction and control. Their relationship finally deteriorated in 2012, shortly before the state brought its initial complaint against appellant and his codefendants.

Several of the victims in this case, as well as other victims of appellant and his family, testified against appellant. The women testified that they were lured into the prostitution scheme by appellant or one of his family members and that they typically worked for one "pimp." Some of the women had disabilities or were low functioning. Appellant and his family members would keep most or all of the money the women made. They kept the women isolated from one another in different parts of the house owned by Robert Washington. They coerced the women into continuing to work as prostitutes by repeatedly using violence and threats of violence.

In mid-2012, police began conducting a large-scale investigation into appellant and his family's prostitution operation, which eventually led to the arrest of appellant, his brother, and his uncles. At the end of the trial, appellant testified on his own behalf. He admitted that he knew his uncles promoted the prostitution of women, but denied that he ever promoted the prostitution of Alexander or any other women.

The jury found appellant guilty of all six counts. He was sentenced a month later. Appellant had previously stipulated to the existence of an aggravating factor under Minn. Stat. § 609.322, subd. 1(b)(1) (2010),[1] namely, that "the offender ha[d] committed a prior qualified human trafficking-related offense."[2] *See* Minn. Sent. Guidelines II.G. (2010) (providing that the presence of an aggravating factor listed in section 609.322, subdivision 1(b), requires an otherwise-presumptive sentence to be increased by 48 months, or by 24 months if the crime was an attempt or conspiracy).[3] Appellant was sentenced as follows, in this order:

- count 7, conspiracy to commit second-degree sex trafficking: a stayed sentence of 14 months, plus 24 months for the aggravating factor, for a total of 38 months;
- counts 3, 2, and 4, second-degree aiding and abetting the promotion of the prostitution of an individual (B.R., J.M., and S.A.): an executed

---

[1] We generally cite to the 2010 version of the Minnesota Statutes, which was in effect at the time appellant's offenses began. We note that section 609.322 has not been amended since 2009.

[2] A sentencing jury also found that two of the victims, J.M. and B.R., were particularly vulnerable, which constituted aggravating factors for sentencing purposes. Minn. Sent. Guidelines II.D.2.b.(1) (2010). However, the district court did not order an upward durational departure in this case and thus did not rely on these additional aggravating factors.

[3] We generally cite to the 2010 version of the Minnesota Sentencing Guidelines, which was in effect at the time appellant's offense began. We note that there were no substantive changes to Guideline 2.G in 2011.

sentence of 18 months, plus 48 months for the aggravating factor, for a total of 66 months for each of these counts;

- count 1, first-degree aiding and abetting the solicitation of a minor to practice prostitution (C.B.): an executed sentence of 90 months, plus 48 months for the aggravating factor, for a total of 138 months; and
- count 6, second-degree aiding and abetting the solicitation of an individual to practice prostitution (T.B.): an executed sentence of 48 months, plus 48 months for the aggravating factor, for a total of 96 months.

The district court ordered the sentences on counts 1, 2, 3, 4, and 6 to be served consecutively. This amounted to an aggregate executed sentence of 432 months. At the sentencing hearing, appellant described himself as "the victim" and claimed that he was innocent of all charges. This appeal followed.

## ISSUES

I.      Is Minn. Stat. § 609.322, subd. 1a(1)–(2), facially overbroad under the First Amendment to the United States Constitution or article I, section 3, of the Minnesota Constitution?

II.      Is there sufficient evidence to uphold appellant's convictions on counts 1 and 6?

III.      Did the district court commit reversible error by misstating the accomplice-liability jury instruction?

IV.      Did the district court abuse its discretion by admitting other-acts evidence?

V.      Was the district court's sentence unlawful?

6

## ANALYSIS

## I.

Appellant argues that Minn. Stat. § 609.322, subd. 1a(1)–(2), violates the First Amendment to the United States Constitution and article I, section 3, of the Minnesota Constitution because it is unconstitutionally overbroad on its face. Appellant asks this court to reverse his convictions on counts 2, 3, 4, and 6 on First Amendment grounds.[4] Appellant does not make an as-applied challenge to the statute. The constitutionality of section 609.322, subdivision 1a(1)–(2), is an issue of first impression. "We review the constitutionality of statutes de novo. The [s]tate bears the burden of showing that a content-based restriction on speech does not violate the First Amendment." *State v. Melchert-Dinkel*, 844 N.W.2d 13, 18 (Minn. 2014) (citation omitted).

The statute that appellant challenges reads in relevant part as follows: "Whoever, while acting other than as a prostitute or patron, intentionally does any of the following" is guilty of a felony: "(1) solicits or induces an individual to practice prostitution; [or] (2) promotes the prostitution of an individual." Minn. Stat. § 609.322, subd. 1a(1)–(2). Appellant's First Amendment challenge hinges on the definition of prostitution: "'Prostitution' means hiring, offering to hire, or agreeing to hire another individual to engage in sexual penetration or sexual contact, or being hired, offering to be hired, or

---

[4] Appellant does not ask this court to reverse his convictions on counts 1 and 7 on First Amendment grounds because these convictions involve the sole minor victim in this case, C.B.

agreeing to be hired by another individual to engage in sexual penetration or sexual contact." Minn. Stat. § 609.321, subd. 9 (Supp. 2011).[5]

Other subdivisions from the definitions statute are also relevant to appellant's First Amendment challenge. An individual "[p]romotes the prostitution of an individual" if he knowingly:

(1) solicits or procures patrons for a prostitute;

(2) provides, leases or otherwise permits premises or facilities owned or controlled by the person to aid the prostitution of an individual;

(3) owns, manages, supervises, controls, keeps or operates, either alone or with others, a place of prostitution to aid the prostitution of an individual;

(4) owns, manages, supervises, controls, operates, institutes, aids or facilitates, either alone or with others, a business of prostitution to aid the prostitution of an individual;

(5) admits a patron to a place of prostitution to aid the prostitution of an individual; or

(6) transports an individual from one point within this state to another point either within or without this state, or brings an individual into this state to aid the prostitution of the individual.

*Id.*, subd. 7 (2010). "Prostitute" means "an individual who engages in prostitution by being hired, offering to be hired, or agreeing to be hired by another individual to engage in sexual penetration or sexual contact." *Id.*, subd. 8 (Supp. 2011).[6] "Sexual contact" means (1) "the intentional touching by an individual of a prostitute's intimate parts," or

---

[5] We cite to the 2011 version of section 609.321, subdivision 9, because the definition of prostitution changed in 2011 during appellant's ongoing prostitution scheme. The 2010 version reads: "'Prostitution' means engaging or offering or agreeing to engage for hire in sexual penetration or sexual contact." Minn. Stat. § 609.321, subd. 9 (2010).

[6] For the same reason cited in footnote 5, we cite to the 2011 version of section 609.321, subdivision 8.

(2) "the intentional touching by a prostitute of another individual's intimate parts," if either act "can reasonably be construed as being for the purpose of satisfying the actor's sexual impulses." *Id.*, subd. 10 (2010). "Sexual penetration" includes a variety of penetrative sex acts if done "for the purpose of satisfying sexual impulses." *Id.*, subd. 11 (2010). Appellant argues that section 609.322, subdivision 1a(1)–(2), is overbroad because the terms used in this section and defined in section 609.321 are themselves overbroad.

### A.    Minn. Stat. § 609.322, subd. 1a(1)–(2), is a content-based regulation of speech.

The United States and Minnesota Constitutions both guarantee the right to free speech. U.S. Const. amend. I; Minn. Const. art. I, § 3. "As a general matter, the [First Amendment] establishes that, above all else, the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Melchert-Dinkel*, 844 N.W.2d at 18 (quotation omitted). "But the Supreme Court has long permitted some content-based restrictions in a few limited areas, in which speech is of such slight social value as a step to truth that any benefit that may be derived from [it] is clearly outweighed by" its costs to society. *Id.* at 19. These traditional areas include incitement, obscenity, defamation, speech integral to criminal conduct, child pornography, fraud, and true threats. *United States v. Alvarez*, 132 S. Ct. 2537, 2544 (2012) (plurality opinion).

When analyzing a challenge to a criminal statute on First Amendment grounds, we first determine whether the statute regulates speech, conduct, or both. *See State v.*

9

*Crawley*, 819 N.W.2d 94, 101 (Minn. 2012).  The state argues that Minn. Stat. § 609.322, subd. 1a(1)–(2), regulates only conduct, not speech.  We disagree.

Subdivision 1a(1) prohibits "solicit[ing]" or "induc[ing]" an individual to practice prostitution.  The definitions section does not define "solicit" or "induce," and non-technical words "are construed . . . according to their common and approved usage." Minn. Stat. § 645.08(1) (2010).  The definition of "solicit" includes "seek[ing] or obtain[ing] by persuasion, entreaty, or formal application."  *The American Heritage Dictionary of the English Language* 1666 (5th ed. 2011).  To "persuade" means to cause someone "to undertake a course of action as by means of argument, reasoning, or entreaty."  *Id.* at 1318.  To "entreat" means "[t]o make an earnest request of" someone or "[t]o ask for earnestly."  *Id.* at 596.  These definitions implicate speech.  The definition of "induce" includes "lead[ing] or mov[ing], as to a course of action, by influence or persuasion."  *Id.* at 896.  This also implicates speech.

Subdivision 1a(2) prohibits "promot[ing] the prostitution of an individual."  This phrase includes a variety of activities, such as "solicit[ing] or procur[ing] patrons for a prostitute," providing premises to aid the prostitution of an individual, supervising a place of prostitution, supervising a business of prostitution, admitting a patron to a place of prostitution, and transporting an individual to aid in the prostitution of the individual. Minn. Stat. § 609.321, subd. 7.  While some of these activities involve mostly or only conduct, several appear to involve a combination of speech and conduct, and "solicit[ing] or procur[ing] patrons for a prostitute" directly implicates speech.  Therefore, Minn. Stat.

§ 609.322, subd. 1a(1)–(2), regulates both speech and conduct and therefore implicates the First Amendment. *See State v. Machholz*, 574 N.W.2d 415, 420 (Minn. 1998).

A criminal statute that regulates speech is content-based "if a person may be prosecuted under the statute [based] entirely on what the person says." *Crawley*, 819 N.W.2d at 101. In other words, a content-based statute regulates speech *because of* its content. *Melchert-Dinkel*, 844 N.W.2d at 18. Section 609.322, subdivision 1a(1)–(2), is a content-based speech regulation because it proscribes a particular *type* of speech based on its content: speech that is used to "solicit[] or induce[] an individual to practice prostitution" or to "promote[] the prostitution of an individual." We conclude, however, that the speech proscribed by the statute is outside the ambit of the First Amendment's protection because it is speech integral to criminal conduct. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498, 69 S. Ct. 684, 688 (1949); *see also New York v. Ferber*, 458 U.S. 747, 759, 761, 102 S. Ct. 3348, 3355, 3357 (1982).

**B.      Minn. Stat. § 609.322, subd. 1a(1)–(2), is not facially overbroad.**

Appellant argues that Minn. Stat. § 609.322, subd. 1a(1)–(2), is overbroad because it also criminalizes activities protected by the First Amendment. To be constitutional, a statute that punishes speech based on its content must not be overbroad. *Crawley*, 819 N.W.2d at 102. "A statute is overbroad on its face if it prohibits constitutionally protected activity, in addition to activity that may be prohibited without offending constitutional rights." *Machholz*, 574 N.W.2d at 419. A criminal defendant may bring a facial challenge against a statute on First Amendment grounds even if the defendant's own activity is plainly unprotected by the First Amendment. *Id.*

11

In general, a statute is considered overbroad only "if it prohibits or chills a *substantial* amount of protected speech along with unprotected speech." *Crawley*, 819 N.W.2d at 102 (emphasis added); *see also New York v. Ferber*, 458 U.S. 747, 769, 102 S. Ct. 3348, 3361 (1982) ("We have . . . insisted that the overbreadth involved be 'substantial' before the statute involved will be invalidated on its face."). "The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *United States v. Williams*, 553 U.S. 285, 303, 128 S. Ct. 1830, 1844 (2008) (quotation omitted).

In support of appellant's argument that the statute is overbroad, he identifies two categories of activities, which we analyze separately.

### 1. Non-obscene films and photographs depicting sexual penetration and/or sexual conduct

Appellant argues that the statute is overbroad because it criminalizes the solicitation, inducement, or promotion of consenting adults to portray themselves in: (1) non-obscene[7] adult films depicting sexual penetration and/or sexual contact; (2) other films depicting sexual contact; (3) non-obscene adult photographs depicting sexual penetration and/or sexual contact; and (4) other photographs depicting sexual contact. Appellant's argument is unpersuasive because the statute does not criminalize or prohibit any of these activities.

---

[7] Obscenity is a well-recognized category of speech that is not protected by the First Amendment. *Alvarez*, 132 S. Ct. at 2544 (plurality opinion). However, the Minnesota Supreme Court has recognized that "non-obscene pornography involving adult performers is protected speech under the First Amendment." *State v. Mauer*, 741 N.W.2d 107, 110 (Minn. 2007). Accordingly, appellant limits his argument to non-obscene films and photographs.

Under the definitions statute, "prostitution" means, in relevant part, "hiring, offering to hire, or agreeing to hire another individual to engage in sexual penetration or sexual contact." Minn. Stat. § 609.321, subd. 9. "Sexual penetration" includes a variety of acts, but *only if* done "for the purpose of satisfying sexual impulses." *Id.*, subd. 11. "Sexual contact" means the intentional touching of "intimate parts," but *only if* the touching "can reasonably be construed as being for the purpose of satisfying the actor's sexual impulses." *Id.*, subd. 10.

In appellant's examples, it is true that consenting adults are solicited, induced, or promoted to engage in sexual penetration and/or sexual contact. But, the sexual penetration or sexual contact is not done "for the purpose of satisfying the actor's sexual impulses." Instead, the solicitation, inducement, or promotion of the sex acts in appellant's examples is done for the purpose of making a film or a photograph. We are persuaded by the state's argument that "[h]iring actors or models to act out a sex act has the immediate purpose of creating a product: a film or photograph. It does not have the immediate purpose of satisfying sexual impulses, even if it secondarily provides that result for [the] actor or producer." Therefore, these activities do not fall within the statute's reach.

### 2. Lap dancing

Appellant argues that the statute is overbroad because it criminalizes lap dancing which, as defined by him, involves an exotic dancer "touching her intimate parts to a patron's crotch area. In return, the patron pays the dancer for the dance." Appellant argues that this type of allegedly "constitutionally protected dancing" involves paying

money for "sexual contact" that has the purpose of satisfying sexual impulses. Appellant's argument is unpersuasive because lap dancing, as he has defined it, is not constitutionally protected speech.

"Nude dancing in bars is expressive conduct, and . . . is protected under our state constitution." *Knudtson v. City of Coates*, 519 N.W.2d 166, 169 (Minn. 1994); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S. Ct. 1382, 1391 (2000) (plurality opinion) (noting that totally nude erotic dancing "is expressive conduct, although we think that it falls only within the outer ambit of the First Amendment's protection"). In *State v. Duncan*, the defendants were prosecuted under Minnesota's indecent-exposure statute for paying money to nude erotic dancers in exchange for having the dancers wrap their legs around the defendants' necks. 605 N.W.2d 745, 747 (Minn. App. 2000), *review denied* (Minn. Apr. 18, 2000). At the time, the indecent-exposure statute forbade "engaging in public displays of lewd, lascivious, or other indecent behavior." *Id.* at 749. The defendants challenged the statute on overbreadth grounds. *Id.* This court rejected that challenge, concluding that "lewd and lascivious behavior is synonymous with obscene behavior. Obscene behavior, conduct, or speech is not protected by the First Amendment and may be regulated. Thus, behavior that is lewd and lascivious is not constitutionally protected, and [the statute] prohibiting such conduct, is not unconstitutionally overbroad." *Id.* at 750 (citations omitted).

Like the conduct in *Duncan*, lap dancing, as defined by appellant, is also "lewd" and "lascivious" behavior and, therefore, is obscene conduct that is not protected by the First Amendment or by article I, section 3, of the Minnesota Constitution. Accordingly,

even if Minn. Stat. § 609.322, subd. 1a(1)–(2), criminalizes or prohibits lap dancing as defined by appellant, the statute is not overbroad because it does not proscribe constitutionally protected activity. *See Machholz*, 574 N.W.2d at 419 (indicating that a statute may be facially overbroad only "if it prohibits constitutionally protected activity").

Even if lap dancing as defined by appellant is not obscene, the statute is still not overbroad because there is no *substantial* overbreadth here. *See Crawley*, 819 N.W.2d at 104 (noting that a statute is overbroad only if it punishes "a substantial amount of protected speech in addition to unprotected speech"); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 2918 (1973) ("[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."); *cf. Knudtson*, 519 N.W.2d at 167, 169 (holding that a city ordinance prohibiting nude dancing at a licensed liquor establishment constituted only a "nominal and incidental" curtailment of free expression). Given the minimal First Amendment value at stake here, there is no substantial overbreadth. We agree with the state: "Balanced with the state's important interest in prohibiting the promotion of the sale of human bodies for sexual gratification, any incidental intrusion onto the limited First-Amendment ground identified by appellant is constitutionally tolerable."

**II.**

Appellant argues that the evidence is insufficient to prove that he *intentionally* aided his brother, Otis, in soliciting C.B. (count 1) and T.B. (count 6) to practice prostitution. "In reviewing a sufficiency of the evidence challenge, we review the record

in the light most favorable to the conviction to determine whether the evidence reasonably could have permitted the jury to convict." *State v. Henderson*, 620 N.W.2d 688, 704–05 (Minn. 2001).

Minn. Stat. § 609.322, subds. 1(a) and 1a(1) (2010), prohibit anyone from "intentionally" soliciting or inducing a person to practice prostitution. Under the accomplice-liability statute, "[a] person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2010). "'Intentionally' means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(3) (2010). To sustain appellant's convictions under section 609.322, the record must therefore contain proof beyond a reasonable doubt either that appellant had the purpose of aiding Otis in soliciting C.B. and T.B. to practice prostitution, or that appellant believed his act of aiding Otis, if successful, would cause C.B. and T.B. to practice prostitution. *See State v. Peterson*, 673 N.W.2d 482, 486 (Minn. 2004) ("[T]he Due Process Clause requires the state to prove every element of a charged offense beyond a reasonable doubt.").

As a state of mind, intent "generally is proved circumstantially, by inference from words and acts of the actor both before and after the incident." *State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000). "A conviction based on circumstantial evidence . . . warrants heightened scrutiny" compared to a conviction based on direct evidence. *State*

*v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). This heightened scrutiny comes in the form of a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013).

"The first step is to identify the circumstances proved." *Id.* "[I]n determining the circumstances proved, we consider only those circumstances that are consistent with the verdict." *Id.* at 599. "As with direct evidence, we construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the [s]tate's witnesses and disbelieved the defense witnesses." *Id.* (quotation omitted).

The relevant circumstances proved are as follows. On the afternoon of July 6, 2012, C.B. and T.B. got into a car with appellant and Otis. Otis was driving, and appellant was sitting in the front passenger seat. Otis drove them to Robert Washington's house, the headquarters of the prostitution operation. In the car, Otis and appellant had a conversation about how they could "make a lot of money from" T.B. After they arrived at the house, Otis brought up the topic of prostitution to C.B. and T.B. Otis explained to C.B. and T.B. that he and appellant took photographs of women, placed advertisements on the Internet that included the photographs, and then gave the women rides when people responded to the advertisements. Otis and appellant discussed placing advertisements for C.B. and T.B. and discussed how much money they could make from having them work as prostitutes.[8]

---

[8] Appellant argues that this is not a circumstance proved because the underlying testimony of the investigator who interviewed C.B. is hearsay and is inconsistent with C.B.'s testimony. We disagree. First, this testimony was received into evidence without a hearsay objection by appellant. Second, in determining the circumstances proved, "we construe conflicting evidence in the light most favorable to the verdict." *Silvernail*, 831 N.W.2d at 599 (quotation omitted).

At some point, appellant left the house with two prostitutes, leaving Otis, C.B., and T.B. behind. C.B. was originally going to go with appellant, but Otis and appellant decided that she would go with Otis and T.B. instead. Otis told another prostitute, A.T., that he and appellant had brought C.B. and T.B. to the house in order to solicit them to work as prostitutes for appellant and himself. Eventually, Otis, C.B., T.B., and A.T. left the house so that A.T. could make out-calls and C.B. and T.B. could observe. A.T. made two out-calls that night, and Otis described to C.B. in more detail the nature of the prostitution scheme and tried to recruit her into it.

"The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). "Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). The circumstances proved are consistent with guilt because they indicate that appellant intended to aid Otis' solicitation of C.B. and T.B. to practice prostitution. Otis and appellant picked up C.B. and T.B., discussed how much money they could make by having T.B. work as a prostitute, and brought them back to Robert Washington's house. At the house, Otis and appellant discussed placing advertisements to promote the prostitution of C.B. and T.B. and discussed how much money they could make by having them work as prostitutes.

Appellant's alternative hypothesis that he was "merely present" while Otis tried to persuade C.B. and T.B. to become Otis' prostitutes is unreasonable in light of all the

18

circumstances proved. The evidence shows that appellant was not a passive observer, but rather was actively involved in the solicitation of C.B. and T.B by discussing with Otis how much money *they* could make by having C.B. and T.B. work as prostitutes and how *they* could place online advertisements for C.B. and T.B. For similar reasons, appellant's alternative hypothesis that he "had no interest in soliciting C.B. and [T.B.] to practice prostitution and thus . . . sent them with Otis" is unreasonable and inconsistent with the circumstances proved. We conclude that the circumstantial evidence as to appellant's intent "form[s] a complete chain that, as a whole, leads so directly to the guilt of [appellant] as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Hanson*, 800 N.W.2d at 622.

### III.

Appellant next argues that the district court committed reversible error by improperly instructing the jury on accomplice liability. Because appellant did not object at trial to the jury instruction, we review this claim for plain error affecting substantial rights. *State v. Manley*, 664 N.W.2d 275, 283 (Minn. 2003). The three-pronged test for plain error requires appellant to show that: (1) the district court committed error; (2) the error committed was plain; and (3) the plain error affected his substantial rights. *Id.* Each prong of the test must be satisfied. *Id.*

"In the context of jury instructions, a district court has broad discretion." *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014). "But a district court abuses that discretion if its jury instructions confuse, mislead, or materially misstate the law. We review the jury

instructions as a whole to determine whether the instructions accurately state the law in a manner that can be understood by the jury." *Id.* (citation omitted).

Counts 1, 2, 3, 4, and 6 each included aiding and abetting as an element of the offense. "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1. "[A]n accomplice liability jury instruction *must* explain to the jury that in order to find a defendant guilty as an accomplice, the jury must find beyond a reasonable doubt that the defendant knew his alleged accomplice was going to commit a crime and the defendant intended his presence or actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 808 (Minn. 2012) (emphasis added).

Here, the district court instructed the jury, in relevant part: "The defendant is guilty of a crime committed by another person when the defendant has played an intentional role in aiding the commission of the crime and made no reasonable effort to prevent the crime before it was committed." The district court plainly erred because its instruction did not contain the requisite *Milton* language, which instructs the jury as to both a defendant's *knowledge* and *intent* in aiding the commission of the offense. *Id.* Moreover, the district court's instruction included an additional element that does not exist by requiring appellant to have affirmatively tried to stop his codefendants from committing their crimes in order to avoid accomplice liability. Therefore, the first two prongs of the plain-error test are satisfied, as the state concedes.

To establish the third prong of the plain-error test, that an erroneous jury instruction affected his substantial rights, appellant has the "heavy burden" of proving that there is "a reasonable likelihood that giving the instruction in question had a significant effect on the jury verdict." *Kelley*, 855 N.W.2d at 283 (quotation omitted). "An erroneous jury instruction will not ordinarily have a significant effect on the jury's verdict if there is considerable evidence of the defendant's guilt." *Id.* at 283–84.

We conclude that there is no reasonable likelihood that a properly instructed jury would have acquitted appellant. First, the record contains evidence that appellant acted directly in soliciting and promoting the prostitution of J.M. (count 2), B.R. (count 3), and S.A. (count 4), and therefore no aiding and abetting finding was necessary to sustain appellant's convictions of counts 2–4. Second, as to counts 1 and 6 involving C.B. and T.B., respectively, appellant cannot meet his heavy burden of showing that the district court's plain error affected his substantial rights because the record contains considerable evidence that (1) appellant knew that Otis was committing a crime, and (2) appellant intended that his presence or actions would further the commission of the crime. Specifically, the evidence showed that appellant and Otis picked up C.B. and T.B., brought them to their uncle's house, discussed how much money they could make by having C.B. and T.B. work for them as prostitutes, and discussed placing online advertisements in order to solicit patrons for C.B.'s and T.B.'s services as prostitutes.

21

## IV.

Appellant claims that the district court abused its discretion by admitting alleged other-acts evidence. We will not overturn a district court's evidentiary decisions "absent a clear abuse of discretion." *State v. Richardson*, 670 N.W.2d 267, 277 (Minn. 2003).

### A. Testimony of two pre-2010 victims

Before trial, the state sought to introduce the testimony of two women who claimed to have worked as prostitutes for appellant and Robert Washington prior to the charged offense period. The state sought to introduce this evidence because it gave "context" to the charged offenses and it showed appellant's intent, knowledge, and absence of mistake or accident, as well as the existence of a common scheme or plan to promote the prostitution of women. The state emphasized the conspiracy count and that this was an ongoing conspiracy. Appellant argued that the evidence was irrelevant, cumulative, and simply propensity evidence. The district court allowed the state to present this evidence because it found that the state's reasons for admissibility were valid.

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). Such evidence may be admissible, however, for non-propensity purposes, such as showing motive, intent, knowledge, identity, absence of mistake or accident, or a common scheme or plan. *Id.*; *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006). Courts apply a five-step analysis to determine the admissibility of other-acts evidence:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and

22

> convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Ness*, 707 N.W.2d at 685–86. Appellant challenges the admission of this evidence under steps (2), (4), and (5) of the *Ness* analysis. But, as to step (2), the record shows that the state clearly indicated what the evidence was offered to prove, both in its pretrial motion and during multiple pretrial arguments before the district court.

Appellant argues that the offered evidence did not resolve any disputed facts at trial and was simply propensity evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. We see no error in the admission of this evidence because it tended to show appellant's intent, knowledge, absence of mistake or accident, and common scheme or plan. Intent is an element of the charged offenses, Minn. Stat. § 609.322, subds. 1(a), 1a, and evidence that appellant and Robert Washington promoted the prostitution of these two prior victims was relevant because it supported the state's argument that appellant intended to aid and abet the prostitution of the current victims. Appellant's knowledge was relevant because the state needed to prove that appellant knew the prostitution scheme existed and knew how to run the scheme with his family. Appellant's absence of mistake or accident was relevant because the state needed to convince the jury that appellant was not just an innocent observer caught in the web of his family's prostitution scheme but, rather, was a key participant

23

The existence of a common scheme or plan was relevant because it provided context to the individual stories of the current victims, showed that appellant's solicitation and promotion of the current victims as prostitutes was part of an ongoing criminal enterprise, and tended to corroborate the state's other evidence and make the state's case more believable. In order for evidence of another crime, wrong, or act to be admissible to show a common scheme or plan, however, "it must have a marked similarity in modus operandi to the charged offense." *Ness*, 707 N.W.2d at 688. We analyze this requirement as to each prior victim.

B.T. worked as a prostitute for appellant for four or five months in 2009. Upon reviewing the record, we conclude that appellant's promotion of B.T.'s prostitution was markedly similar to the charged offenses because: (1) appellant was operating the prostitution scheme with his uncle Robert Washington; (2) appellant and Alexander posted online advertisements of B.T.; (3) appellant exercised financial control over B.T. by forcing her to sell her car and give the money to appellant and by giving all of the money she made on out-calls to appellant; and (4) B.T. endured appellant's verbal abuse and witnessed appellant's physical abuse toward Alexander, and she felt scared to leave.

K.W. worked as a prostitute for Robert Washington from 2008 until 2010, and testified about her experience as a prostitute and her observations of the prostitution of B.T. and other women who worked for Robert Washington and appellant. We conclude that appellant's prostitution-related activities as described by K.W. were markedly similar to the charged offenses because: (1) appellant was operating the prostitution scheme with his uncle Robert Washington; (2) appellant and Robert Washington directed K.W. to post

24

online advertisements for them; (3) appellant and Robert Washington would drive the women to out-calls; (4) all of the money that appellant's prostitutes made went to appellant; (5) eventually, the prostitution activities took place out of Robert Washington's St. Paul home; (6) appellant promoted the prostitution of B.T.; and (7) K.W. saw appellant use physical violence against Alexander.

Appellant argues that the probative value of the testimony of B.T. and K.W. was outweighed by its potential for unfair prejudice. We disagree. As discussed above, their testimony was relevant to a number of permissible purposes. Moreover, the district court provided a cautionary instruction to the jury prior to their testimony and during its final instructions, which "lessened the probability of undue weight being given by the jury to the evidence." *State v. Lindsey*, 755 N.W.2d 752, 757 (Minn. App. 2008) (quotation omitted), *review denied* (Minn. Oct. 29, 2008). We conclude that the district court did not abuse its discretion by admitting this testimony.

**B.      Evidence of appellant's acts of violence against Alexander and J.M.**

Over appellant's objection, the district court allowed the state to present evidence showing that appellant committed acts of violence against Alexander and J.M. during the time that they worked for him as prostitutes. Appellant argues that this evidence "had no relevance to the charged offense[s] and only made [appellant] look like a bad guy to the jury." We disagree and find that this evidence constitutes immediate-episode evidence, which is an exception to the general character-evidence rule. *State v. Riddley*, 776 N.W.2d 419, 425 (Minn. 2009).

25

> [T]he rule excluding evidence of the commission of other offenses does not necessarily deprive the state of the right to make out its whole case against the accused on any evidence which is otherwise relevant upon the issue of the defendant's guilt of the crime with which he was charged. Rather, the state may prove all relevant facts and circumstances which tend to establish any of the elements of the offense with which the accused is charged, even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes.

*Id.* (alteration omitted) (quotations and citation omitted). Immediate-episode evidence is admissible "where two or more offenses are linked together in point of time or circumstances so that one cannot be fully shown without proving the other, or where evidence of other crimes constitutes part of the [events at issue]." *Id.* (quotation omitted).

We conclude that appellant's acts of violence against Alexander and J.M. were properly admitted as immediate-episode evidence. Alexander, J.M., and B.T. testified about appellant's violence and threats of violence toward Alexander and J.M. during the course of the prostitution scheme. The state's expert on sex trafficking testified that pimps use violence and threats of violence to maintain control over the women and to coerce them into continuing to work as prostitutes for them. The testimony of Alexander and the victims showed that appellant used violence and threats of violence against these women in order to coerce their continued participation in the prostitution scheme. This testimony would have been less believable if the state were not allowed to elicit the various ways in which appellant maintained control over them, including by using violence. By admitting this evidence, the district court properly allowed the state "to make out its whole case against" appellant because the charged offenses and the evidence

26

of violence were "linked together in point of time or circumstances so that one cannot be fully shown without proving the other." *Id.* (quotations omitted).

### C. Evidence that appellant stole J.M.'s inheritance money

J.M. worked as a prostitute for appellant from 2008 to 2011, during which time J.M. believed that she and appellant were "a couple." In 2011, J.M. inherited over $7,000 from her father. She spent some of the money on herself, but appellant found out about the money and forced her to give him the remaining funds.

The record shows that appellant generally exercised complete financial control over J.M. and the other women who worked for him as prostitutes. The state's expert testified that pimps make their prostitutes financially dependent upon them and that this financial dependence ensures that the women continue to work as prostitutes. We conclude that the evidence of appellant's theft of J.M.'s inheritance money was properly admitted as immediate-episode evidence under *Riddley* because it was inextricably intertwined with appellant's ongoing control over J.M. and her submission to him as a prostitute.

Even if some of appellant's claimed other-acts evidence were improperly admitted, appellant would have the burden of showing "that the erroneous admission of evidence created a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *Id.* at 427 (quotation omitted). Appellant cannot make this showing. We have already noted that the district court provided a cautionary instruction prior to the testimony of B.T. and K.W. and during its final instructions, and "[w]e presume a jury follows a court's cautionary instruction." *Id.* at 428. As to the

27

violence and threats of violence against Alexander and J.M., this evidence is no more shocking or inflammatory than the evidence that he used emotional and financial control to coerce women into continuing to have sex with strangers for money. Moreover, significant or "overwhelming" evidence of guilt can reduce the impact of erroneously admitted evidence, *id.*, and there was overwhelming evidence of appellant's guilt in this case. Multiple women testified regarding appellant's prostitution scheme, and the police linked appellant's e-mail accounts and telephones to several of his online advertisements and corroborated the victims' testimony by interviewing them. There is no reasonable probability that the challenged evidence significantly affected the verdict.

We conclude that the district court did not abuse its discretion by admitting the testimony of two pre-2010 victims of an ongoing prostitution scheme operated by appellant and his uncle, evidence of appellant's acts of violence against Alexander and J.M., and evidence of appellant's financial control over J.M.

## V.

Appellant challenges his sentence on several grounds. First, he argues that the sentence for his conviction of count 7, conspiracy to commit second-degree sex trafficking, must be vacated because the timeframe and conduct underlying count 7 are entirely encompassed by the other counts of which he was convicted. The state concedes that appellant is correct. Count 7 was sentenced first.

Aside from exceptions that do not apply here, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to

28

prosecution for any other of them." Minn. Stat. § 609.035, subd. 1 (2010). This section "bar[s] multiple sentences for crimes that arise from a single behavioral incident." *State v. Bauer*, 792 N.W.2d 825, 827 (Minn. 2011). "In order to determine whether two intentional crimes are part of a single behavioral incident, we consider factors of time and place . . . [and w]hether the segment of conduct involved was motivated by an effort to obtain a single criminal objective." *Id.* at 828 (quotation omitted). Whether multiple sentences are permissible under section 609.035 is a question of law, which we review de novo. *State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012).

According to the complaint, the timeframe of the conspiracy count is from September 1, 2010, to July 31, 2012. The other counts of which appellant was convicted and sentenced—counts 1, 2, 3, 4, and 6—all took place within the same timeframe. Moreover, appellant's conduct underlying the conspiracy count "was motivated by an effort to obtain [the same] criminal objective" as his conduct underlying the other counts, namely, the prostitution of the victims. *Bauer*, 792 N.W.2d at 828. We therefore agree with the parties that the sentence for count 7 must be vacated, and appellant must be resentenced.

We decline to reach appellant's other sentencing arguments. Because we vacate appellant's sentence on count 7, the district court must resentence appellant on counts 1, 2, 3, 4, and 6. Accordingly, the resolution of appellant's other sentencing arguments "is not necessary to the disposition of appellant's case." *State v. Vang*, 847 N.W.2d 248, 265 n.9 (Minn. 2014); *see also Lipka v. Minn. Sch. Emps. Ass'n, Local 1980*, 550 N.W.2d

29

618, 622 (Minn. 1996) ("[J]udicial restraint bids us to refrain from deciding any issue not essential to the disposition of the particular controversy before us.").

# D E C I S I O N

We affirm appellant's convictions because: (1) the challenged statute is not facially overbroad; (2) there is sufficient evidence to uphold appellant's convictions of counts 1 and 6; (3) the district court did not commit reversible error by misstating the accomplice-liability jury instruction; and (4) the district court did not abuse its discretion by admitting other-acts evidence. However, we vacate appellant's sentence for his conviction of count 7 and remand for resentencing on counts 1, 2, 3, 4, and 6.

**Affirmed in part, vacated in part, and remanded.**